Moulding-Brownell Corporation, Appellee, v. E. C. Delfosse Construction Company et al., Defendants. Katharine Sherwood Trumbull, Appellant.

Gen. No. 39,065.

Heard in the third division of this court for the first district at the December term, 1936. Opinion filed June 30, 1937.

RYAN, CONDON & LIVINGSTON, of Chicago, for appellant; JAMES G. CONDON, JOHN M. TUOHY and EDWIN W. BURCH, of Chicago, of counsel.

ALFRED LUBIN, MCINERNEY, EPSTEIN & ARVEY, A. S. & E. W. FROEHLICH, THOMAS H. MADDOCK, JOSEPH FITZGERALD, WYATT B. ANGELO and H. C. RUMERY, all of Chicago, for appellee; ALFRED LUBIN, JOHN L. MCINERNEY and E. W. FROEHLICH, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Two causes were consolidated in the circuit court, one being a bill to foreclose a mortgage and the other being a bill to foreclose certain alleged mechanics' liens. Upon consolidation the two causes were referred

to and heard by a master who made a report recommending that a decree of foreclosure and sale be entered against the defendans both as to the first mortgage holder and all the mechanics' lien claimants. Objections were filed to the master's report as to the allowance of the mechanics' liens which later became exceptions and a decree was entered by the court overruling the exceptions of defendants. No error is assigned with respect to the lien of the holder of the first mortgage, but it is claimed that the decree with respect to the mechanics' lien claimants is erroneous and should be reversed.

The owners of the property who were defendants in the trial court were Charles W. Trumbull and Grace Sherwood Trumbull. Subsequent to the filing of the above mentioned causes, the defendant, Grace Sherwood Trumbull, departed this life and her heirs Rose Trumbull, Betty Trumbull, Jean Trumbull and Katharine Sherwood Trumbull, became parties defendant to the suit. The defendant Katharine Sherwood Trumbull resided outside of the State, and had no knowledge of the proceedings. Within the year after entry of the decree the case was brought to her attention and she filed a petition for leave to appeal in this court, which was granted.

The basis of the case is as follows:

During the early part of the year 1933, Charles W. Trumbull and Grace Sherwood Trumbull, father and mother of the defendant, Katharine Sherwood Trumbull, were the owners of certain property located at 2257 Silverton Way, which was held by said defendants subject to a first mortgage of $30,000 then and now held by the National Fraternal Society of the Deaf, a corporation. The property was located just west of the Illinois Central tracks at the 23rd street entrance to the World's Fair.

The Trumbulls entered into an agreement with the Fridstein Engineering Company, known as the contractor, for the construction of a restaurant building. This agreement is now before this court for interpretation. The agreement was duly executed and thereafter recorded in the recorder's office of Cook county as provided by law. The contractor thereupon proceeded to enter into agreements with subcontractors, who agreed and did furnish materials and labor for the building. The building was constructed at a total cost in excess of $105,000. The Fridstein Engineering Company subsequently assigned their alleged cause of action to the National Builders Bank of Chicago as trustee.

After the completion of the building the property was operated at a loss from the outset until August 22, 1933, when the original bill to foreclose certain mechanics' liens upon the real estate and improvements was filed. On October 6, 1933, that suit was followed by a suit to foreclose the first mortgage on the property. Both suits were later consolidated and are known as the instant case.

Plaintiff contends that the words used in the contract did not constitute a waiver of the liens.

Defendant contends that the provisions of the contract constituted a waiver of liens as to the contractor and also as to the subcontractors.

After describing in detail the work which was performed by the contractor and the payments to be made, paragraph 12 construes the contract in the following words:

"12. The purpose and intent of this agreement is that the Contractor shall remodel and construct on the above described premises the buildings shown on the Plans and shall provide and install the restaurant equipment, on or before June 15th, 1933, free and clear of all claims or liens, except the claim of the contractor

pursuant to the terms of this agreement, . . . Payment shall be made to the Contractor from time to time of all rentals, proceeds and avails that may become due pursuant to the contracts, leases, etc., entered into by the Owner as hereinbefore described. To secure such payment to the Contractor, the Owner hereby assigns all his right, title and interest in such contracts, leases, etc., to the Contractor until the Contractor shall have been paid the cost of the work plus a Contractor's profit of $10,000.00 . . ."

Did the words, "free and clear of all claims or liens, except the claim of the contractor pursuant to the terms of this agreement," constitute a waiver of liens under the Illinois Mechanic's Lien Statute? In the case of *Rittenhouse & Embree Co. v. Warren Const. Co.*, 264 Ill. 619, at page 624, the court said:

"The contract in question here provides, in its first paragraph, that the Warren Construction Company is to construct, furnish and deliver to the Chicago, Burlington and Quincy Railroad Company, 'free from all claims, liens and charges, etc., all of the rough carpentry work required in the construction and completion of the fifteen-story and basement fireproof office building to be erected at the southwest corner of Jackson boulevard and Clinton street, in the city of Chicago.' It is plain that under the provisions of this contract had the Warren Construction Company performed its contract no lien could have attached in favor of any sub-contractor. (*Brown Construction Co. v. Central Illinois Construction Co.*, 234 Ill. 397.) The language of the contract, 'free from all claims, liens and charges,' is too plain and specific in this respect to leave the matter open to question on that subject. When appellee contracted with the Warren Construction Company to furnish the materials for use in this building it is presumed to have done so with knowledge of the provisions of the contract between the

Warren Construction Company and the Chicago, Burlington and Quincy Railroad Company and with the expectation that the Warren Construction Company would fully perform its contract with the railroad company. At the time appellee made its contract with the Warren Construction Company it did so with the full knowledge that if the Warren Construction Company complied with its contract it must look to the Warren Construction Company alone for its pay, and that no lien could attach to the premises in favor of appellee or any other sub-contractor under the Warren Construction Company. (*Brown Construction Co. v. Central Illinois Construction Co., supra.*) That the Warren Construction Company failed and became a bankrupt did not alter the situation. Appellee acquired no superior rights in the premises by reason of the failure of the Warren Construction Company to perform its contract with the railroad company.''

In interpreting the contract it is the duty of the court to consider all the language employed by the makers of the contract in order to properly construe its meaning.

What did the parties mean by the language, ''free and clear of all claims or liens, except the claim of the contractor pursuant to the terms of this agreement?'' Manifestly the parties to the contract could not intend an interpretation of the contract which would call for the delivery of the building free and clear of all claims or liens and then, by the exception, use language which would provide that the contractor *should* have a lien.

Paragraph 8 of said contract provides:

''8. The Owner has entered into a contract with the Prima Company for a sign display on the sign structure and has entered into a lease with the John P. Harding Restaurant Company for the use of the space in the buildings to be constructed and remodeled hereunder, and proposes to enter into agreements for the sale of time and space in connection with an Electric News-

paper to be located on the sign structure and may enter into other leases for the use of part of the above described premises. Copies of the Prima Company contract, and the John P. Harding Restaurant Company lease are attached hereto and made a part of this agreement. The Owner hereby assigns to the Contractor all rentals, proceeds and avails as they may become due pursuant to the terms of said contracts and/or leases until all moneys due the Contractor under the terms of this agreement shall have been in full, subject however to the payment to the Cord Tire Company and others, of the sum of $15,000.00 in accordance with a certain agreement entered into by and between this Cord Tire Company and others, and the owner, a copy of which is attached hereto and made a part of this agreement. The Owner in addition to the foregoing payments agrees to pay to the Contractor 25% of the gross receipts received from contracts for the sale of time and space on the Electric Newspaper, toward liquidation of the sums to become due to the Contractor until he shall be paid in full.''

The obligation of the owner of the premises, as set forth in the latter part of the foregoing paragraph, would necessarily mean claims against the owner and against the income from the leases, the sale of space and the receipts, and would properly be referred to as a ''claim'' in favor of the contractor against the owner of the building and the income from said building. There is a well-known distinction in the meaning of the words ''claim'' and ''lien.'' The former is but a demand while the latter is understood to be a legal hold on property as security for a debt. When the parties made use of the language set forth in the contract that the Engineering Company would remodel and construct the premises or building as shown on the plans and provide and install the restaurant equipment ''free and clear of all liens and claims excepting the claim of the contractor pursuant to the terms of the agreement,''

we are inclined to believe that the word "claim" means the claim which the contractor had upon the income, the leases, the advertising space and receipts therefrom as provided in the contract and that the contractor did not intend to retain a lien on the premises as coming within the purview of the Mechanic's Lien Act of this state. To give it any other construction would be contradictory to the language employed. We think the parties intended the usual meaning and well-known distinction between the words "claim" and "lien."

Plaintiffs-appellees in their brief at page 13, frankly admit that at the time the contract was made the parties to said contract had in mind the waiving of liens (paragraph 12) and in their brief say: "The parties contemplated a waiver of the liens of subordinate contractors, but not the general contractor's lien which is expressly reserved." We fail to see how the subcontractors' liens could be waived by the language employed and at the same time preserve the lien of the general contractor.

It is next contended by plaintiff-appellee that the defendants-appellants are seeking to escape liability under the contract in question by contending that the general contractor agreed to accept payment solely from the rentals, income, proceeds and avails of the operation and use of the real estate but that when the foreclosure of the mortgage took place the rents, issues and profits were diverted from the use and benefit of the contractor and became part of the security for the debt under the mortgage, through the fault and negligence of defendants-appellants who failed to pay interest and taxes according to the terms of the trust deed. This situation was evidently in the minds of the makers of the contract for they provided for the same in section 11 of the contract, which reads as follows:

"11. The Owner also agrees that he will promptly pay all interest and principal payments as they fall due on the first mortgage now on the above described real

estate and all payments for taxes as levied and assessed by the proper authorities. Should the Owner be unable to make such payments, during the period that there is any money unpaid and due to the Contractor under the terms of this agreement the Contractor shall have the right to pay such, interest, principal and/or taxes and such sums shall be added to the total sum then due to the Contractor, together with 6% interest thereon until paid.''

It is quite evident from this language that the parties had in mind that at some future time the owner of the building might not be in a position to pay his taxes and interest and provision was made therefor by giving the contractor the privilege of paying such expenses and adding the amount thereof to his debt, he to be repaid therefor out of the income from said building as a result of operating the same as a restaurant and the other specified sources of income.

Reference is made by defendant in its argument to the equities in the case. The entire enterprise has every appearance of being a typical promotional adventure fostered by energetic contractors, for use during a ''Century of Progress,'' rather than the usual ordinary contract entered into with owners who desire a building erected for normal purposes during normal times. The Fridstein Engineering Company, by their lawyers, prepared the contract and each provision thereof and submitted it to the owner of the premises. That contract provided as to how said company should receive payment and instead of relying upon a lien on said premises, it chose to take an assignment of the income, assignment of the lease to the tenant in the restaurant, the advertising space on the top of the building as well as the publication of the electric newspaper and made them all part of the contract. The Fridstein Engineering Co. then commenced the erection of the building. It alleges that it did not intend to waive its

lien, but only intended after obtaining all the material from the subcontractors to waive the subcontractors' lien. We are not impressed with the equity of this position, and we believe the contractor intended to and did waive its lien and consequently the subcontractors' as well.

There is one item in this decree which stands in a different position than the claims of the other subcontractors and that is the claim of John A. Scribbins, surviving partner of Graves & Scribbins. The Scribbins' contract for the architectural work performed was entered into with the owner and not with the Fridstein Engineering Co. Apparently the right to such lien is not contested and the only reference thereto is that plaintiff asks that the decree be reversed as to all mechanics' liens which were included by its terms. No objection or assignment of error as to the lien of John A. Scribbins is made by defendant. The master's report found that the sum of $5,200, together with interest at the rate of five per cent was due from August 29, 1933, for said work and no part of which has been paid. This claim stands in a different position from any of the others and we think it was properly allowed by the master and in the decree by the trial court. The decree as to John A. Scribbins is affirmed.

From a review of the entire record we are satisfied that an error was committed by the trial court in construing the said contract and in holding that Fridstein Engineering Co., general contractor, had not waived any liens on its own behalf or on behalf of the subcontractors. We think the trial court erred in failing to sustain the objections and exceptions filed by the defendant to the master's report which allowed the contractors' and subcontractors' lien and in entering a decree thereon.

For the reasons set forth in this opinion the decree is affirmed as to the claim of John A. Scribbins and the

lien of the mortgage and as to the balance of the decree relating to mechanics liens, it is reversed and remanded with directions to sustain the objections and exceptions to the master's report and as to the remaining claimants for liens, that the bill be dismissed at intervening petitioner's costs.

*Decree affirmed in part; reversed in part and remanded with directions.*

HEBEL and HALL, JJ., concur.