JUSTICE LINDBERG
 

 delivered the opinion of the court:
 

 Defendant-appellant, Montalbano Builders, Inc. (Montalbano), appeals from an order of the circuit court of Du Page County denying his motion to stay all proceedings and to compel arbitration. Montalbano and defendants-appellees Joseph and Mary Falbo (the Falbos) entered into a written contract which included an arbitration clause on October 29, 1980, for the construction of a home. The Falbos agreed to pay Montalbano $360,000 for the construction work. Montalbano entered into various contracts with subcontractors to perform the work, none of which contained an arbitration clause.
 

 To date, the Falbos have paid $208,236.00 to Montalbano on the contract. During construction, a dispute arose between the Falbos and Montalbano, and the Falbos have refused to pay any additional sums to Montalbano until certain corrections are made. Prior to litigation, 15 subcontractors and Montalbano had filed lien claims with the office of recorder of deeds of Du Page County. Two subcontractors filed separate suits to foreclose on mechanics’ lien claims against the Falbos’ real property. The cases were consolidated on July 21,1982.
 

 The Falbos filed their answer and countercomplaint against Montalbano, alleging (1) breach of contract; (2) breach of an implied warranty of habitability; (3) precontract fraud; (4) unfair and deceptive trade practices; (5) negligence, and also petitioned the court for a general settlement under section 30 of the Mechanics’ Liens Act (Ill. Rev. Stat. 1981, ch. 82, par. 30). As its responsive pleading to all complaints, Montalbano filed on September 29, 1982, a motion to stay all proceedings and for an order compelling arbitration between the Falbos and Montalbano. Prior to this motion, eight subcontractors joined the lawsuit in addition to those who had initiated the proceedings. After five more subcontractors joined this litigation, the court on November 17, 1982, denied Montalbano’s motion, who then filed a timely interlocutory appeal.
 

 After oral argument in this case, Montalbano filed on May 24, 1983, a motion to realign the parties on appeal and to suggest the mootness of objections to Montalbano’s motion to compel arbitration. In his appellate motion, Montalbano asserted that it had settled and compromised the claims of nine subcontractors and was assigned their lien rights. Additionally, Montalbano stated that seven more subcontractors had withdrawn any objections to and joined in its motion to compel arbitration. On May 31, 1983, the Falbos filed their answer and supporting memorandum wherein they asserted that Montalbano’s motion lacked certain procedural requisites, and did not render any issue moot. On July 20, 1983, this court granted Montalbano’s motion to file a reply to the Falbos’ answer and ordered that the reply be taken with this case.
 

 Although the order appealed from in the instant case is interlocutory, we nonetheless have jurisdiction for the trial court’s denial of the requested relief is analogous to the denial of an injunction. (Kelso-Burnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 37, 437 N.E.2d 26, 28; School District No. 46 v. Del Bianco (1966), 68 Ill. App. 2d 145, 152-53, 215 N.E.2d 25, 28-29.) The only question brought before a reviewing court on an interlocutory appeal is whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought. (107 Ill. App. 3d 34, 42, 437 N.E.2d 26, 31; see Ording v. Springer (1980), 88 Ill. App. 3d 243, 246, 410 N.E.2d 428, 431.) We conclude that there was not a sufficient showing and therefore reverse the trial court’s order denying Montalbano’s motion to compel arbitration.
 

 In Illinois, contractual arbitration provisions are construed in light of the Illinois Uniform Arbitration Act. (Ill. Rev. Stat. 1981, ch. 10, par. 101 et seq.) Illinois adopted the provisions of the Uniform Arbitration Act with minor modifications in 1961. (School District No. 46 v. Del Bianco (1966), 68 Ill. App. 2d 145, 153, 215 N.E.2d 25, 29.) Prior to the enactment of the Uniform Arbitration Act, the common-law rule in many States was that agreements to arbitrate were revocable until the arbitrator rendered his decision and agreements to arbitrate future disputes were unenforceable. The Uniform Arbitration Act was established to change the common-law rule.
 

 “One of the fundamental objectives of the act was to encourage and facilitate the arbitration of disputes by providing a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions, including the labor-management field. The language of the act emphasizes an intention to change the common-law policy of judicial hostility toward arbitration to one favoring arbitration. Contrary to decisions found in many states, it specifically makes a written agreement to arbitrate effective whether relating to existing or future disputes.” Layne-Minnesota Co. v. Regents of the University of Minnesota (1963), 266 Minn. 284, 287-88, 123 N.W.2d 371, 374. See School District No. 16 v. Del Bianco (1966), 68 Ill. App. 2d 145,154, 215 N.E.2d 25, 29.
 

 Both the Uniform Arbitration Act and the Federal Arbitration Act (9 U.S.C. sec. 1 et seq. (1976)), enacted in 1925 are patterned after the New York arbitration statute enacted in 1920. (Sonderby, Commercial Arbitration: Enforcement of An Agreement to Arbitrate Future Disputes, 5 J. Mar. J. Prac. & Proc. 72, 75-76 (1971), citing 1920 N.Y. Laws, ch. 275, originally in N.Y. Civ. Prac. Act sec. 1448-69, now in N.Y. Civ. Prac. Law & Rules sec. 7501 — 14 (McKinney 1963); see also Greenfield, The Contract to Arbitrate Future Disputes: A Comparison of the New Mexico Act With the New York and Federal Acts, 9 N.M.L. Rev. 71, 71-72 (1978-79).) Given the common origins of the Federal and uniform statutes, courts interpreting State arbitration statutes patterned after the Uniform Arbitration Act look for guidance to Federal court decisions interpreting similar provision of the Federal Arbitration Act. (See Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc. (1982), 294 Md. 443, 450 A.2d 1304; Loomis, Inc. v. Cudahy (1982), 104 Idaho 106, 656 P.2d 1359; National Camera, Inc. v. Love (Colo. 1982), 644 R2d 94; see also Northern Illinois Gas Co. v. Aireo Industrial Gases (7th Cir. 1982), 676 F.2d 270 (recognizing that Federal and Illinois authorities are in accord in the law of arbitration).) Similarly, the Illinois Supreme Court has stated that judicial opinions from other jurisdictions are given greater than usual deference in construing the Uniform Arbitration Act since the purpose of the act is to make uniform the laws of those States which enact it. (Garver v. Ferguson (1979), 76 Ill. 2d 1, 8.) Because of the common origin of the Federal and uniform acts, and the fact that the Illinois Uniform Arbitration Act is patterned after the Uniform Arbitration Act, we proceed to interpret our statute with the aid of decisions from other States and Federal courts.
 

 Section 2(a) of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1981, ch. 10, par. 102(a)) provides: At a hearing to stay a judicial proceeding and to compel arbitration, the trial court should concern itself solely with whether an agreement exists to arbitrate the dispute in question. Farris v. Hedgepeth (1978), 58 Ill. App. 3d 1040, 1043, 374 N.E.2d 1086, 1088; Bunge Corp. v. Williams (1977), 45 Ill. App. 3d 359, 362, 359 N.E.2d 844, 845.
 

 “On application of a party showing an [arbitration] agreement ***, and the opposing party’s refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.”
 

 The trial court did not make a finding with respect to the existence of an agreement to arbitrate which was error. (KelsoBurnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 41, 437 N.E.2d 26, 31.) In their pleadings, the parties disputed whether an agreement to arbitrate existed. On appeal, Montalbano points to paragraph 22 of the typewritten standard contract agreement initialed by the parties, which states: “All claims, disputes and other matters in question arising out of, or relating to this Agreement, or the breach thereof, shall be decided by arbitration, pursuant to the Rules established by the Northern Illinois Home Builders Association for the arbitration of such disputes.” Montalbano argues that this clause demonstrates each party agreed to arbitration.
 

 On the other hand, the Falbos contend that the parties’ written agreement actually contained an additional arbitration clause with a different set of governing rules, and thus, the parties could not have reached agreement on a specific arbitration procedure. The contract does refer to two arbitration clauses. While these two clauses appear to conflict, the language of the second clause contained in AIA Form No. A107 and incorporated by reference into the general conditions of the parties’ contract states that it becomes operative only if the parties do not establish an alternative procedure. Here, the parties established with the inclusion of paragraph 22 an alternative arbitration procedure and thus, the parties did agree to one form of dispute resolution.
 

 In addition to ascertaining the existence of an agreement to arbitrate, a court should order arbitration only if the dispute is arbitrable. In resisting arbitration, the Falbos argue that the issues of breach of implied warranty of habitability, precontract fraud, unfair and deceptive trade practices, negligence, and general settlement under the Mechanics’ Liens Act are not subject to arbitration, but cite no authority for their position. Arbitration contracts are interpreted in the same manner and according to the same rules as are all other contracts. (See Flood v. Country Mutual Insurance Co. (1968), 41 Ill. 2d 91.) The parties are bound to submit only those issues which they have agreed clearly to resolve through the arbitration mechanism and a court should not extend an agreement by construction or implication. 41 Ill. 2d 91, 94.
 

 Whether a dispute is within the scope of an arbitration clause “ ‘should be determined at the earliest possible moment and should be controlled by judicial guidelines.’ ” (Farris v. Hedgepeth (1978), 58 Ill. App. 3d 1040, 1043, 374 N.E.2d 1086, 1088, quoting Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc. (1969), 109 Ill. App. 2d 224, 229, 248 N.E.2d 289, 291; see KelsoBurnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 40, 437 N.E.2d 26, 30.) The court and not the arbitrator should determine whether the issues in dispute are within the scope of the arbitration agreement. (Premier Electrical Construction Co. v. Ragnar Benson, Inc. (1982), 111 Ill. App. 3d 855, 862, 444 N.E.2d 726, 730; KelsoBurnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 41, 437 N.E.2d 26, 30; Village of Carpentersville v. Mayfair Construction Co. (1981), 100 Ill. App. 3d 128, 134, 426 N.E.2d 558, 564; Iser Electric Co. v. Fossier Builders, Ltd. (1980), 84 Ill. App. 3d 161, 164, 405 N.E.2d 439, 441; Croom v. City of De Kalb (1979), 71 Ill. App. 3d 370, 375, 389 N.E.2d 647, 651; Paschen Contractors, Inc. v. John J. Calnan, Co. (1973), 13 Ill. App. 3d 485, 489, 300 N.E.2d 795, 798; see Northern Illinois Gas Co. v. Aireo Industrial Gases (7th Cir. 1982), 676 F.2d 270, 275 (applying Illinois law); but see School District No. 16 v. Del Bianco (1966), 68 Ill. App. 2d 145, 155, 215 N.E.2d 25, 30.) Both questions of fact and law are arbitrable pursuant to a contractually chosen arbitration forum. Applicolor, Inc. v. Surface Combustion Corp. (1966), 77 Ill. App. 2d 260, 267, 222 N.E.2d 168, 171.
 

 We believe that the parties’ arbitration clause is sufficiently broad to encompass each of the Falbos’ counts. In the instant case, the written contract contains a “generic” arbitration clause which does not enumerate which disputes are arbitrable. (Roosevelt University v. Mayfair Construction Co. (1975), 28 Ill. App. 3d 1045, 331 N.E.2d 835.) To determine the scope of the clause, the court must examine both the wording of the particular clause and the terms of the parties' contract. (Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc. (1969), 109 Ill. App. 2d 224, 248 N.E.2d 289.) In Roosevelt University v. Mayfair Construction Co. (1975), 28 Ill. App. 3d 1045, 331 N.E.2d 835, the court held that an arbitration clause containing the language “arising out of, or relating to” the contract was very broad in scope and thus justified submitting the dispute involving damages resulting from one party’s delays to arbitration even though the contract contained no express provision regarding this issue. Courts, therefore, construe broad language in an arbitration clause as an agreement by the parties “to resolve through arbitration any and all disputes arising out of the subject matter of the contract ***.” (Ozdeger v. Altay (1978), 66 Ill. App. 3d 629, 632, 384 N.E.2d 82, 85.) The language employed in the arbitration clause in the case at bar is very broad, encompassing all claims, disputes and other matters “arising out of, or relating to this Agreement, or the breach thereof ***.” From the breadth of the wording, we believe the parties intended to resolve all types of disagreements pertaining to the construction of the home.
 

 Our conclusion that each count in the Falbos’ counterclaim is arbitrable is buttressed by the drafting of the counterclaim itself. In count I, the Falbos alleged Montalbano breached his contract with the Falbos. The first 13 paragraphs of count I allege facts relating to the discussions between the parties preceding their signing of the contract, payments made by the Falbos to Montalbano and the fulfillment by the Falbos of all of their obligations under the contract. Counts II-VI reallege these identical paragraphs in support of the separate bases for liability alleged in each of these counts. Very few additional facts other than those alleged in count I are alleged in the subsequent counts of the Falbos’ counterclaim. Since the facts which underlie the breach of contract count also underlie the other counts, we conclude that these counts arise out of or relate to the contract or its breach.
 

 Examination of the counts themselves also leads to the conclusion that the counts are arbitrable. Count II is based upon Montalbano’s alleged breach of an implied warranty of habitability. The Falbos allege no facts in addition to those alleged in their breach of contract count to support count II. Our supreme court in Petersen v. Hubschman Construction Co. (1979), 76 Ill. 2d 31, held that an implied warranty of habitability exists in the sale of a new home by a builder-vendor. (See generally Demko, Caveat Aedificator — Home Builders Beware! 71 Ill. B.J. 724 (1983).) In reaching this conclusion, the Petersen court stated that the warranty arises “by virtue of the execution of the agreement between the vendor and the vendee.” (Petersen v. Hubschman Construction Co. (1979), 76 Ill. 2d 31, 41.) Clearly, therefore, a count based upon a warranty of habitability arises out of or relates to the contract here. Thus, the breach of warranty count must be resolved by the arbitrator.
 

 We likewise believe that count III based upon precontract fraud is arbitrable. The Falbos in count III do not allege that Montalbano’s fraudulent actions relate specifically to the parties’ agreement to arbitrate. Rather, the Falbos assert they were denied the performance to which they were entitled based upon the representations made to them prior to entering into the contract. The majority of courts considering a claim of fraud concerning the contract as a whole as opposed to a fraudulent inducement to enter into an arbitration agreement has concluded that the fraud claim is within the scope of a broad arbitration clause. (E.g., Prima Paint Corp. v. Flood & Conklin Manufacturing Co. (1967), 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801; Blumberg v. Berland (11th Cir. 1982), 678 F.2d 1068, 1071; In re Oil Spill (7th Cir. 1981), 659 F.2d 789, 794; Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Wilbanks (1982), 162 Ga. App. 154, 155, 290 S.E.2d 122, 123, all interpreting the Federal Arbitration Act; National Camera, Inc. v. Love (Colo. 1982), 644 P.2d 94; Quirk v. Data Terminal Systems, Inc. (1980), 379 Mass. 762, 766-67, 400 N.E.2d 858, 860, interpreting State arbitration acts; see Annot., 11 A.L.R. 4th 774 (1982), and cases cited therein.) We agree with-these decisions representing the majority view, especially when the facts comprising the precontract fraud count are essentially identical to those underlying the breach of contract count.
 

 Similarly, count IV alleging unfair and deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 et seq.) (consumer fraud act) states no facts in addition to those alleged in count I. Count IV merely recites conclusory allegations that the facts comprising the breach of contract and fraud counts also constitute unfair and deceptive acts violative of the consumer fraud act. Our reading of count IV discloses no allegations based upon any aspect of the strong public policy embodied in the consumer fraud act, but rather the allegations “appear to be an attempt to bolster and supplement clearly private claims.” (Greenleaf Engineering & Construction Co. v. Teradyne, Inc. (1983), 15 Mass. App. 571,_, 447 N.E.2d 9, 13; see Flower World of America, Inc. v. Wenzel (1978), 122 Ariz. 319, 594 P.2d 1015.) Therefore, we believe count IV is subject to arbitration.
 

 Count V based on negligence alleges that Montalbano breached its duty to construct the home in a good and workmanlike manner. Therefore, the Falbos used the negligence term to describe a breach of a duty owed to the Falbos by virtue of the parties’ contract and not from a duty based in tort. To support this count, the Falbos alleged the identical defects in construction .contained in count I. Therefore, this count is also arbitrable. See Premier Electrical Construction Co. v. Ragnar Benson, Inc. (1982), 111 Ill. App. 3d 855, 862, 444 N.E.2d 726, 731; Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd. (2d Cir. 1967), 385 F.2d 158; Bos Material Handling, Inc. v. Crown Controls Corp. (1982), 137 Cal. App. 3d 99, 105-06, 186 Cal. Rptr. 740, 742-43; cf. In re Oil Spill (7th Cir. 1981), 659 F.2d 789.
 

 Count VI, seeking a general settlement under section 30 of the Mechanics’ Liens Act (Ill. Rev. Stat. 1981, ch. 82, par. 30), realleges the first 18 paragraphs of count I. Mechanics’ liens exist only by virtue of the statute creating them (Robinette v. Servite Fathers (1977), 49 Ill. App. 3d 585, 586, 364 N.E.2d 679, 681), and the liens act becomes a term of every construction contract between the owner and the contractor for construction of a building. (Deerfield Electric Co. v. Herbert W. Jaeger & Associates, Inc. (1979), 74 Ill. App. 3d 380, 384, 392 N.E.2d 914, 917.) Since the liens act is a term of the contract and the facts comprising count VI are identical to those comprising count I, we believe that count VI arises out of or relates to the parties’ contract and thus is arbitrable. We note that the Falbos do not allege in count VI that Montalbano violated the liens act, but only alleged that the contractor failed to comply with his contract. Whether Montalbano violated the contract is an issue which must be decided by the arbitrator. Additionally, in their count requesting a general settlement, the Falbos seek the following relief: an accounting to determine the amount owed by the Falbos to Montalbano and from Montalbano to the subcontractors, payment of the sum owed by the Falbos to the subcontractors pro rata, discharge of the liens on the property, and an injunction against the subcontractors’ legal proceedings enforcing their lien claims. By arbitrating their dispute with Montalbano while the subcontractors’ liens action is stayed, the Falbos will obtain much of the relief they request in their general settlement count. •
 

 Montalbano argues that since a valid arbitration clause exists, the court must enforce the arbitration agreement even though the general contractor and the homeowner are parties to a multiparty lawsuit concerning the identical construction project. The Falbos respond that where an arbitration agreement involves some, but not all of the parties to a multiparty dispute, the policy favoring arbitration must be balanced against that favoring joinder of claims. The Falbos contend that the claims of the parties to the instant dispute arise from the same project and involve common issues and evidence and thus, arbitration is not appropriate in this case. The Falbos rely heavily on J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, to establish that the existence of the multiple claims in this case supports the trial court’s refusal to compel arbitration. In Vicik, the homeowners contracted with a general contractor for the construction of a home. After a dispute arose between these parties, materialmen and subcontractors filed suit to foreclose their mechanics’ liens. In response, the general contractor filed a motion to compel arbitration. The subcontracts did not contain arbitration clauses. In concluding the policy favoring joinder outweighed that favoring arbitration, the Vicik court emphasized the degree to which the claims were intermingled:
 

 “The claims of the four subcontractors, who are not subject to arbitration, all arose from the same construction project which is the basis of the disputes between the general contractor and the homeowners. The claims which the subcontractors pressed in their legal actions did not arise from direct disputes between the subcontractors and either the general contractor or the homeowners but only as subsidiary claims resulting from the basic dispute between general contractor and homeowners. Therefore, all claims involve common issues and evidence.” J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 820, 426 N.E.2d 257, 261.
 

 In reaching its conclusion, the appellate court, fifth district, in Vicik discussed this court’s earlier decision in Iser Electric Co. v. Fossier Builders, Ltd. (1980), 84 Ill. App. 3d 161, 405 N.E.2d 439. In Iser, a general contractor entered into a contract with homeowners which contained an arbitration clause. After the general contractor had subcontracted electrical work to Iser, the homeowners terminated the general contractor’s contract and entered into a new contract with Iser for completion of the electrical work on the house. Thereafter, Iser sued both the homeowners and the general contractor for breach of a contract it had with each party. After the general contractor had filed its answer and counterclaim, the homeowners filed a motion to compel arbitration. In reversing the trial court’s denial of a homeowners’ motion, this court reaffirmed the general rule that agreements to arbitrate will be enforced despite pending multiparty litigation. 84 Ill. App. 3d 161,166, 405 N.E.2d 439, 442.
 

 While recognizing the general rule, the court in J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, distinguished Iser on factual grounds. Unlike Iser, wherein this court found that “[n]o determinative relationship is shown between these proceedings which is not clearly based upon different rights and obligations arising under the separate contracts” (Iser Electric Co. v. Fossier Builders, Ltd. (1980), 84 Ill. App. 3d 161, 165, 405 N.E.2d 439, 442), the Vicik court found the subcontractors’ claims were only subsidiary to the basic dispute between the homeowners and the general contractor. J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 820, 426 N.E.2d 257, 261.
 

 Subsequent to Vicik, this court in Kelso-Burnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 2d 34, 437 N.E.2d 26, again discussed the enforceability of arbitration clauses in construction contracts. There, the subcontractor Kelso-Burnett Co. contracted with the general contractor Zeus Development Corp. to perform electrical work for a development. After the general contractor terminated the subcontracts, the subcontractor filed a suit to foreclose its mechanic’s lien and alleged breach of contract. The general contractor filed motion to compel arbitration which the trial court denied. On appeal, this court reversed, holding in part that in contrast to Vicik, the issues and relationships before it were not sufficiently interrelated and interdependent to negate the policy favoring arbitration. 107 Ill. App. 3d 34, 42, 437 N.E.2d 26, 32.
 

 We believe that the policy in Illinois favoring arbitration requires the conclusion that the trial court erred in refusing Montalbano’s motion to compel arbitration. In so holding, we find unpersuasive the arguments advanced by courts in this and other States for denying arbitration and for consolidating all parties’ claims in the judicial forum.
 

 Courts advance several reasons for refusing to compel arbitration and for consolidating the parties and issues subject to arbitration with the court proceedings. The first reason is that allowing arbitration between two of the parties in multiparty proceedings while litigation involving some of these same parties proceeds frustrates the goal of judicial economy. (J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 820, 426 N.E.2d 257, 261; County of Jefferson v. Barton-Douglas Contractors, Inc. (Iowa 1979), 282 N.W.2d 155; Prestressed Concrete, Inc. v. Adolf-son & Peterson, Inc. (1976), 308 Minn. 20, 240 N.W.2d 551.) Many courts have discussed the potential for a multiplicity of actions based upon use of the arbitration and judicial forums. (Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc. (1982), 294 Md. 443, 450 A.2d 1304; City of Hot Springs v. Gunderson’s Inc. (S.D. 1982), 322 N.E.2d 8; Knolls Cooperative Section No. 1, Inc. v. Hennessy (1956), 3 Mise. 2d 220, 150 N.Y.S.2d 713; Galt v. Libbey-OwensFord Glass Co. (7th Cir. 1967), 376 E2d 711.) The fifth district of our appellate court expressed this concern in J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 820, 426 N.E.2d 257, 261:
 

 “Where arbitration would increase rather than decrease delay, complexity and costs, it should not receive favored treatment.”
 

 Closely related to this concern for judicial economy is the argument that joinder should be favored over arbitration when the issues in the arbitration and court proceeding are closely intermingled involving common issues and evidence, thereby resulting in the duplication of proof. (J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 820, 426 N.E.2d 257, 261; County of Jefferson v. Barton-Douglas Contractors, Inc. (Iowa 1979), 282 N.W.2d 155, 159; Prestressed Concrete, Inc. v. Adolf son & Peterson, Inc. (1976), 308 Minn. 20, 22-23, 240 N.W.2d 551, 553; Loomis, Inc. v. Cudahy (1982), 104 Idaho 106, _, 656 P.2d 1359, 1375-76 (dissenting opinion).) The Vicik court stated that the lien foreclosure action of the subcontractors and the arbitration between the general contractor and owners would necessarily involve common issues and evidence because the subcontractors’ claims were subsidiary to the basic dispute between the general contractor and the owners. (Vicik.) An additional reason courts have advanced for favoring joinder over arbitration is that allowing two forums to decide multiparty disputes creates the potential for inconsistent results.
 

 We believe none of these reasons warrants our refusal to enforce the arbitration clause in the instant case. Requiring the parties here to arbitrate will not result in judicial inefficiency. Were all parties and issues joined in the lien foreclosure action, at least an equivalent amount of judicial resources would be utilized in the consolidated proceeding. More effort may be required of the Falbos and Montalbano in resolving the disputes between them in arbitration and the disputes with the subcontractors in the judicial forum, but this result is not unfair to either Montalbano or the Falbos because they specifically agreed in writing to resolve their disputes in arbitration. Since the issues raised by the Falbos in their counterclaim were subject to arbitration, fewer judicial resources will be expended by forcing the parties to resolve their disputes privately than if the entire counterclaim were resolved in the judicial proceeding. Even if more judicial resources are expended as a result of our decision to compel arbitration, we do not believe that judicial economy is a . sufficient basis for denying arbitration. See Dickinson v. Heinhold Securities, Inc. (7th Cir. 1981), 661 F.2d 638, 646; C. Itoh & Co. (America), Inc. v. Jordan International Co. (7th Cir. 1977), 552 F.2d 1228, 1231; Al-Haddad Brothers Enterprises, Inc. v. M.S. Agapi (D. Del 1982), 551 F. Supp. 956, 959; Town of Danvers v. Wexler Construction Co. (1981), 12 Mass. App. 160,_, 422 N.E.2d 782, 785.
 

 The subsidiary nature of the subcontractors’ claims similarly does not warrant denial of Montalbano’s motion to compel arbitration. In J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, the court emphasized the subsidiary nature of the subcontractors’ claims in denying the arbitration and ordering those claims consolidated with those in the judicial proceeding. Confronted with different facts from those present in Vicik, this court in Kelso-Burnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 42-43, 437 N.E.2d 26, 32, distinguished Vicik by stating that in the case before it, the subcontractors’ claims against the general contractor were not subsidiary to the other subcontractors’ claims against the general contractor. The Falbos’ argument that by distinguishing Vicik the Kalso-Burnett court was accepting the Vicik court’s decision is untenable. In distinguishing Vicik, this court was not accepting either the reasoning of or the result reached by the Vicik court.
 

 Certain factors militate toward the conclusion that the subcontractors’ claims here are not subsidiary to the dispute between Montalbano and the Falbos. The rights between the Falbos and Montalbano are defined by the contract between them. The rights of the subcontractors are defined by their separate contracts with the general contractor. The distinct nature of the contractual rights of the subcontractors is recognized by the Mechanics’ Liens Act. A subcontractor has five remedies to enforce his rights: (1) an action at law against the original contractor alone; (2) an action at law against the original contractor and the owner jointly; (3) an action at law upon the original contractor’s completion bond; (4) an action in equity to enforce the subcontractor’s lien; and (5) intervention in a pending action of the original contractor against the owner. (Ill. Rev. Stat. 1981, ch. 82, par. 1 et seq.; see Illinois Mechanics’ Lien 5 — 54 (Ill. Inst. Cont. Legal Educ. 1981).) The remedies of a subcontractor are cumulative and may be pursued consecutively or concurrently. (Culver v. Elwell (1874), 73 Ill. 536; Stankiewicz v. Irvine (1941), 310 Ill. App. 673, 35 N.E.2d 433 (abstract); see Illinois Mechanics’ Liens 5 — 54 (Ill. Inst. Cont. Lega! Educ. 1981).) Thus, while in the instant case the plaintiff J&K Cement chose to file this lien foreclosure action in chancery, it could have filed an action at law against Montalbano directly for payment based upon Montalbano’s alleged breach of their contract. In this sense, therefore, the subcontractors’ recovery rights are not necessarily subsidiary to the dispute between Montalbano and the Falbos.
 

 Even if the subcontractors’ claims are viewed as subsidiary, we disagree with the Vicik court’s conclusion that the subsidiary nature of the claims justifies consolidation of the arbitration hearing with the court proceedings. Rather, we conclude that arbitration of the primary dispute between the Falbos and Montalbano will determine the amount owed Montalbano. After Montalbano receives payment, funds should be available to satisfy the claims of his subcontractors, thereby possibly alleviating the need for the subcontractors to foreclose on their mechanics’ liens. (See Kelso-Burnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 43, 437 N.E.2d 26, 32; cf. Marcus v. Superior Court (1977), 75 Cal. App. 3d 204, 212, 141 Cal. Rptr. 890, 894.) If the result of arbitration is the elimination of the need for court proceedings, then the goals of judicial economy and of resolving disputes outside the judicial forum are advanced, not frustrated.
 

 Neither do we believe that duplication of proof will result because the two proceedings involve common issues and evidence. The dispute between Montalbano and the Falbos which is subject to arbitration involves proofs which are not necessary or even relevant to the subcontractors’ lien action. The Falbos’ counterclaim is directed at Montalbano exclusively except for count VI seeking a general settlement. The Falbos alleged that Montalbano misrepresented to the Falbos that “the specifications contained in the Customer Building Proposal for the construction of the home were the same specifications contained in the plans drawn by the architect” except for items the parties had agreed to change. Evidence necessary to prove this assertion would not be germane in the lien foreclosure action. The arbitrator also will have to rule on the counts based upon an implied warranty of habitability, precontract fraud and unfair and deceptive trade practices, none of which should require proof duplicative of that offered in the lien foreclosure action. The multitude of construction defects alleged in the Falbos’ counterclaim suggest that the arbitration hearing will be broader in scope than the lien foreclosure action. Since only eight subcontractors still hold lien claims against the property, that proceeding will not cover many of the construction defects alleged in the Falbos’ counterclaim.
 

 In contrast to arbitration which is designed to resolve the disputes arising out of or relating to the contract between the Falbos and Montabano, the purpose of a lien foreclosure action is for the subcontractor to obtain a legal hold on the owner’s property as security for a debt. (See Moulding-Brownell Corp. v. E.C. Delfosse Construction Co. (1937), 291 Ill. App. 343, 9 N.E.2d 459.) The burden is on the subcontractor to prove that he has satisfied the statutory conditions precedent to his right to enforce the lien. (Schaller-Hoerr Co. v. Gentile (1910), 153 Ill. App. 458, 461.) The four prerequisites to a subcontractor’s lien are: (1) a valid contract; (2) the contract must be with a party considered to be an original contractor under the statute; (3) the furnishing of lienable materials or services; and (4) performance of the contract by the subcontractor or the existence of a valid excuse for nonperformance. (See Illinois Mechanics’ Liens 5 — 29 through 5 — 30 (Ill. Inst. Cont. Legal Educ. 1981).) In their lien foreclosure action, therefore, the remaining subcontractors must demonstrate substantial performance of their contracts with Montalbano. The proof the subcontractors must offer will not necessarily duplicate that offered by Montalbano to establish his performance of the contract between Montalbano and the Falbos. Proof by the subcontractors may not even be necessary as a result of the determination by the arbitrator of the amount owed by the Falbos to Montalbano.
 

 Nor do we believe that the potential for inconsistent results from the judicial and arbitration forums warrants nonenforcement of the arbitration clause. Neither party has demonstrated to us how inconsistent results can obtain from staying the judicial action while arbitration proceeds. Rather than producing inconsistent results, this procedure will likely result in payment to Montalbano of a sum of money which can then be used to satisfy Montalbano’s obligations to his subcontractors. We believe that we should adhere to the general rule in Illinois that arbitration agreements in multiparty litigations should be enforced despite the existence of claims by third parties which create the potential for duplicative proceedings. Iser Electric Co. v. Fossier Builders, Ltd. (1980), 84 Ill. App. 3d 161, 405 N.E.2d 439; Galt v. Libbey-Owens-Ford Glass Co. (7th Cir. 1967), 376 F.2d 711, 715-16; see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp. (1983), 460 U.S. 1, 19-21, 74 L. Ed. 2d 765, 782, 103 S. Ct. 927, 939 (“Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement”); C. Itoh & Co. (America) Inc. v. Jordan International Co. (7th .Cir. 1977), 552 F.2d 1228, 1231; Travel Consultants, Inc. v. Travel Management Corp. (D.C. Cir. 1966), 367 F.2d 334, 339, cert, denied (1967), 386 U.S. 912, 17 L. Ed. 2d 785, 87 S. Ct. 861; Charles J. Frank v. Associated Jewish Charities of Baltimore, Inc. (1982), 294 Md. 443, 459-60, 450 A.2d 1304, 1310-12; Town of Danvers v. Wexler Construction Co. (1981), 12 Mass App. 160, _, 422 N.E.2d 782, 785-86; Atlas Plastering, Inc. v. Superior Court (1977), 72 Cal. App. 3d 63, 72, 140 Cal. Rptr. 59, 64; Madden v. Kaiser Foundation Hospitals (1976), 17 Cal. App. 3d 699, 714, 552 P.2d 1178, 1188, 131 Cal. Rptr. 882, 892; Knolls Cooperative Section No. 1 v. Hennessy (1956), 3 Misc. 2d 220, 222-23, 150 N.Y.S.2d 713, 716.
 

 We also reject two additional arguments raised by the Falbos. Based upon Kelso-Burnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 437 N.E.2d 26, the Falbos first argue that arbitration should not be ordered because Montalbano created the multiplicity of parties problem here by failing to include mandatory arbitration clauses in his subcontracts. The Falbos’ attempt to place upon Montalbano the responsibility for the multiplicity of parties is unpersuasive. In Kelso-Burnett, this court distinguished J.F. Inc. v. Vicik (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, on the basis that in KelsoBurnett, the subcontractor who sought to avoid arbitration had ereated a multiplicity problem by instituting the foreclosure action which by its very nature required joinder of all interested parties as defendants. Kelso-Burnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 42, 437 N.E.2d 26, 32, citing Ill. Rev. Stat. 1979, ch. 82, par. 9.
 

 In contrast to Kelso-Burnett, no party to the arbitration agreement here caused the multiplicity problem. The multiplicity difficulties arose when the two subcontractors who were not parties to the contract containing the arbitration clause filed suit to foreclose on their mechanic’s lien. Montalbano no more caused the multiplicity problem than did the Falbos. While it may have been more prudent for Montalbano to have included arbitration clauses in his subcontracts, he was not required to do so. Nothing prevented the Falbos from insisting that Montalbano only employ subcontractors who would agree to arbitrate disputes in a consolidated hearing. The Falbos were fully aware that work would be performed by subcontractors with which they would have no direct contractual relationship. The inability to require the subcontractors’ participation in the arbitration hearing, therefore, is as much the Falbos’ fault as Montalbano’s. The Falbos should not be relieved of the contractual obligation to arbitrate simply' because the subcontractors are not subject to arbitration, thereby forcing the Falbos to protect their interests in two different forums. Were we to deny Montalbano’s demand for arbitration, arbitration clauses in multiparty construction contracts could be rendered meaningless solely because one or several of the subcontractors did not agree to arbitrate their disputes with the general contractor. We do not believe that the policy in this State favoring arbitration should be frustrated so easily.
 

 Concern of the trial judge and the Falbos about the Falbos’ exposure to liability during arbitration similarly does not warrant denial of Montalbano’s motion to compel arbitration. While both state that under the liens act, the Falbos’ home would be exposed to liability during arbitration proceedings, Montalbano persuasively argued at the hearing on his motion that the Falbos’ home would be subject to the same liability during consolidated trial proceedings. If this cause proceeded to court on the lien foreclosure suit, and Montalbano were awarded less than the total amount of the mechanic’s lien claims, and Montalbano did not satisfy his additional debt, then the subcontractors could proceed against the Falbos and their home. Thus, the Falbos’ potential liability is not altered by use of the judicial as opposed to the arbitration forum. The trial court also expressed concern that the resolution of the dispute between the Falbos and Montalbano by arbitration will impair the subcontractors’ rights to obtain full satisfaction of their debts. The parties have failed to cite and we have not found any authority that states that the subcontractors’ recovery is dependent upon the arbitrator’s findings concerning the contract between the homeowners and the general contractor.
 

 In addition to rejecting the reasons advanced by the Falbos and other courts for denying arbitration in multiparty litigation, we believe there exists several persuasive arguments supporting our decision to compel arbitration in this case. In Charles J. Frank v. Associated Jewish Charities of Baltimore, Inc. (1982), 294 Md. 443, 450 A.2d 1304, the Maryland Court of Appeals summarized two reasons courts have advanced for compelling arbitration between two parties involved in multiparty litigation. The first rationale is that the policy of the Uniform Arbitration Act adopted by Illinois and other States which favors arbitration as a means of dispute resolution would be frustrated if courts did not enforce arbitration agreements. This rationale was expressed in Town of Danvers v. Wexler Construction Co. (1981), 12 Mass App. 160, 422 N.E.2d 782:
 

 “ ‘If a claim of right to arbitration could be foreclosed whenever a dispute between the parties to the contract derives from another person’s claim against one of the parties, the utility of broad arbitration agreements would be undermined.’ ” 12 Mass. App. 160, _, 422 N.E.2d 782, 785, quoting Acevedo Maldonado v. P.T.G. Industries, Inc. (1st Cir. 1975), 514 F.2d 614, 617.
 

 In addition to frustration of the policy favoring arbitration, the Frank court stated as a second rationale for compelling arbitration that “the enactment of the Uniform Arbitration Act evidences a legislative intent that arbitration not be enjoined to prevent multiplicity of actions.” (Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc. (1982), 294 Md. 443, 457, 450 A.2d 1304, 1311.) This rationale was first articulated by the United States Court of Appeals for the Seventh Circuit in Galt v. Libbey-Owens-Ford Glass Co. (7th Cir. 1967), 376 F.2d 711. Applying the Illinois Uniform Arbitration Act in a diversity case, the Galt court stated:
 

 “Section 2(d) of the Illinois Act shows that the Legislature contemplated a multiplicity of actions. In enacting the Uniform Arbitration Act, the Legislature has not eradicated a chancellor’s inherent powers, but the Legislature has determined in Section 2 that it is no longer equitable to enjoin arbitration to prevent multiplicity of actions.” 376 F. 2d 711, 716.
 

 We find these rationales persuasive. Courts in this State have recognized consistently the public policy favoring arbitration. (Board of Trustees v. Cook County College Teachers Union, Local 1600 (1981), 102 Ill. App. 3d 681, 430 N.E.2d 249; Wilhelm v. Universal Underwriters Insurance Co. (1978), 60 Ill. App. 3d 894, 377 N.E.2d 62.) Parties agree to broad arbitration clauses in construction contracts specifically to encompass disputes which are not foreseeable at the time of contracting and expect that such agreements will be specifically enforceable in a court action. To deny Montalbano’s motion to compel arbitration here would deny parties the right to their contractually chosen method of dispute resolution. We are not prepared to ignore the policy favoring arbitration simply because of the presence of multiple parties. Similarly, we believe the drafters of the Uniform Arbitration Act anticipated multiparty problems and intended that arbitration agreements nonetheless be enforced in such situations.
 

 In addition to granting Montalbano’s motion to compel arbitration, we believe that the subcontractors’ lien foreclosure action should be stayed pending the outcome of the arbitration hearing. Section 2(d) of the Uniform Arbitration Act states:
 

 “Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.” (111. Rev. Stat. 1981, ch. 10, par. 102(d).)
 

 The Falbos’ counterclaim challenging the construction of their home is arbitrable. The eight subcontractors have filed their lien foreclosure action seeking security to ensure satisfaction of the debt owed to them by Montalbano. Since the result of the arbitration may eliminate the necessity for pursuing the court action, we order that the entire lien action be stayed pending arbitration. While the subcontractors are not parties to the contract containing the arbitration clause, both Federal and State courts have stayed court proceedings involving parties who are not bound by the arbitration clause. See Kelso-Burnett Co. v. Zeus Development Corp. (1982), 107 Ill. App. 3d 34, 437 N.E.2d 26; School District No. 46 v. Del Bianco (1966), 68 Ill. App. 3d 145, 215 N.E.2d 25; Al-Haddad Brothers Enterprises, Inc. v. M.S. Agapi (D. Del. 1982), 551 F. Supp. 956; Hartford Financial Systems, Inc. v. Florida Software Services, Inc. (D. Me. 1982), 550 F. Supp. 1079; Martin K. Eby Construction Co. v. City of Arvada (D. Colo. 1981), 522 F. Supp. 449; Town of Danvers v. Wexler Construction Co. (1981), 12 Mass. App. 160, 422 N.E.2d 782; cf. CBCO, Inc. v. Grani Indstallation, Inc. (1979), 95 Cal. App. 3d 290, 157 Cal. Rptr. 28; Marcus v. Superior Court (1977), 75 Cal. App. 3d 204,141 Cal. Rptr. 890.
 

 The Falbos’ last basis for avoiding arbitration is that fundamental fairness notions would be violated if this court were to allow the Northern Illinois Home Builders Association (Association) to decide this dispute between Montalbano, one of its members, and the Falbos. While not alleging that the arbitration forum is actually biased or prejudiced, the Falbos argue the appearance of bias is sufficient to require nonenforcement of the arbitration clause. In response, Montalbano contends that the Association is the proper forum for resolution of this dispute.
 

 The merits of Falbos’ public policy argument do not, we believe, require us to declare the arbitration forum here inimical to notions of fairness. Where a contract is in fundamental conflict with public policy, the contract will not be enforced. (People ex rel. Callahan v. Marshall Field & Co. (1980), 83 Ill. App. 3d 811, 404 N.E.2d 368.) Illinois courts apply a strict test in determining whether a contract violates public policy. (First Financial Insurance Co. v. Purolator Security, Inc. (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17; Rutter v. Arlington Park Jockey Club (7th Cir. 1975), 510 F.2d 1065, 1069.) In determining the public policy of this State as to contracts, courts look only to its constitution and statutes, and, when they are silent, to judicial precedent and the constant practice of government officials. Schnackenberg v. Towle (1954), 4 Ill. 2d 561, 565, cert, denied (1955), 349 U.S. 939, 99 L. Ed. 1267, 75 S. Ct. 785.
 

 The Falbos cite no provision of our constitution or any statutes supporting their position that arbitration here violates public policy. Examination of the practice of government officials is not relevant to the instant inquiry, and the judicial precedents cited by the Falbos do not require the conclusion that this clause should be invalidated. The Falbos cite two decisions from foreign jurisdictions as support for their position that the appearance of bias warrants nonenforcement of the arbitration clause. This court is not bound in determining its public policy by the decisions of other States, however, and the Falbos cite no Illinois cases concluding that similar arbitration clauses violate public policy.
 

 The only Illinois decisions cited by the Falbos, Freeport Construction Co. v. Star Forge, Inc. (1978), 61 Ill. App. 3d 999, 378 N.E.2d 558, and Moshier v. Shear (1881), 102 Ill. 169, are either unsupportive or distinguishable. In remanding the case to the lower court, the reviewing court in Freeport stated that the party alleging arbitrator bias must prove these allegations to warrant the termination of an ongoing arbitration hearing. Freeport does not support the Falbos’ public policy argument because the Falbos admit they do not even allege the existence of bias in the instant case. The Illinois Supreme Court in Moshier overturned an arbitration award because an arbitrator in the second proceeding had conferred with one of the arbitrators in the prior proceeding covering the same controversy. Moshier is distinguishable in that there, the court found an actual impropriety after the issuance of the arbitrator’s award. As no impropriety is even alleged here, and no arbitration hearing has yet been held, the Falbos’ arguments are both unpersuasive and premature.
 

 The arbitration clause in the case at bar is conspicuous and the Falbos do not contend that they were not aware of this provision when they signed the contract. In addition, on the same page as the arbitration clause was a fully capitalized sentence which states: “SECTION 22 [the arbitration clause] OF THIS CONTRACT IS NULL AND VOID IF AT THE TIME OF ITS EXECUTION, THE CONTRACTOR REFERRED TO ABOVE IS NOT A MEMBER IN GOOD STANDING OF NIHBA.” Thus, the Falbos were expressly aware that Montalbano was a member of the Association when they signed the contract. The absence of persuasive Illinois precedent and the clarity of the contract language suggest that this arbitration clause does not violate public policy.
 

 In light of our disposition of this case, we need not address Montalbano’s motion to realign the parties and to suggest the mootness of certain objections to its trial court motion to compel arbitration.
 

 Accordingly, we reverse the order of the circuit court of Du Page County and grant Montalbano’s motion to compel arbitration and to stay the judicial proceedings pending completion of the arbitration hearing.
 

 Reversed and remanded with directions.
 

 SEIDENFELD, P.J., and NASH, J., concur.