KURLAND STEEL COMPANY, Plaintiff-Appellant, v. CARLE FOUNDATION HOSPITAL *et al.*, Defendants-Appellees.

Fourth District   No. 4—89—0383

Opinion filed July 18, 1989.

Michael J. Tague and Leonard T. Flynn, both of Franklin, Flynn & Palmer, of Champaign, for appellant.

Anne C. Burr and William J. Brinkman, both of Thomas, Mamer & Haughey, of Champaign, for appellee Carle Foundation Hospital.

JUSTICE KNECHT delivered the opinion of the court:

This is an interlocutory appeal from an order of the circuit court of Champaign County dismissing for failure to state a cause of action a complaint for preliminary injunction to stay arbitration proceedings. We affirm.

On April 20, 1987, the defendant, Carle Foundation Hospital (Carle), as owner, entered into a contract with English Brothers Company (English Brothers), as general contractor, to remodel a portion of Carle's building. The contract contained a clause stipulating all disputes arising out of and relating to the contract were to be decided by arbitration.

English Brothers entered into a subcontract with the plaintiff, Kurland Steel Company (Kurland), which provided Kurland would furnish and erect steel for the Carle project. The subcontract contained an indemnification clause in favor of English Brothers; however, it did not include an agreement to arbitrate. Kurland ordered certain specified steel plates for the project from Robinson Steel Company (Robinson). After the receipt and installation of the plates, it was discovered the steel did not meet the agreed-upon carbon content specifications. Consequently, the defective steel plates were removed and replaced by and at the expense of Kurland.

By reason of delay caused by the removal and reinstallation of the steel plates, Carle has claimed damages and demanded English Brothers submit to binding arbitration pursuant to the parties' construction contract. The matter is set for arbitration before the American Arbitration Association. Neither Kurland nor Robinson is designated as a party to the arbitration. Relying on the subcontract, English Brothers has demanded Kurland defend and indemnify it

from the damage claims Carle has advanced.

On February 22, 1989, Kurland filed a complaint for declaratory judgment. Count I of the complaint requested the court (1) issue a preliminary injunction staying arbitration between Carle and English Brothers and (2) resolve in a court of law the rights and obligations of all the parties involved. Carle filed a motion to dismiss for failure to state a cause of action (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(a)), arguing count I failed to allege lack of an agreement to arbitrate as required by the Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 102(b)).

On May 2, 1989, the trial court granted Carle's section 2—615 motion to dismiss, finding count I of the complaint filed by Kurland was substantially insufficient in law. The court relied on *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889, and its progeny. A contrary holding by the Fifth District Appellate Court in *J.F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, was specifically rejected by the trial court. The trial court found there was no just reason to delay enforcement or appeal. 107 Ill. 2d R. 304(a).

■ The sole question before a reviewing court on an interlocutory appeal is "whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought." (*Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34, 41-42, 437 N.E.2d 26, 31.) Here the trial court denied Kurland's petition for an injunction to stay arbitration between Carle and English Brothers. We conclude Kurland's failure to allege the parties lacked a contractual agreement to arbitrate in the event of a dispute constituted a sufficient showing to sustain the order of the trial court.

In Illinois, contractual arbitration agreements are construed in light of the Uniform Arbitration Act (Act). (Ill. Rev. Stat. 1987, ch. 10, par. 101 *et seq.*) Section 2(b) of the Act provides "[o]n application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate." (Ill. Rev. Stat. 1987, ch. 10, par. 102(b).) None of the parties involved in this case deny a valid arbitration agreement exists between Carle and English Brothers. In its petition to stay the arbitration proceedings between Carle and English Brothers, Kurland failed to allege the former parties did not agree to arbitrate their disputes. Instead, Kurland argued the policy of joinder supported the issuance of a permanent injunction enjoining such arbitration so the common rights and interests of all the parties could be decided by a court of law.

Kurland maintained a single legal proceeding joining all of the interested parties and determining the cause of Carle's damages would avoid a multiplicity of lawsuits and inconsistent results. Kurland presents the same arguments on appeal.

Kurland relies heavily on *J.F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, to support its theory the arbitration proceedings between the owner and general contractor in this case should be stayed because the contract dispute is closely intermingled with the disputes between multiple parties, some of which are not subject to binding arbitration. In *Vicik*, the owners contracted with a general contractor for the construction of a home. When a contract dispute arose between the principal parties, the subcontractors and material men filed suit to foreclose their mechanic's liens. The general contractor filed a motion to compel arbitration of its dispute with the owner under the provisions of its contract with them. The subcontracts lacked arbitration clauses. The owners moved to consolidate the foreclosure suits and petitioned the court to enjoin the arbitration. The motion was granted. The trial court later reversed itself on a motion to reconsider and denied the petition for injunction.

The Fifth District Appellate Court reversed the holding of the trial court after finding the policies favoring joinder outweighed those favoring arbitration. The court held:

> "Where an arbitration agreement involves some, but not all, of the parties to a multiparty litigation, the policy favoring arbitration must be weighed against the policies favoring joinder of claims. Where arbitration would increase rather than decrease delay, complexity and costs, it should not receive favored treatment. However, it is not sufficient to show merely that litigation would be the speedier and more economical means of resolving controversy. It also must be shown that the issues and the relationships among the parties to the multiparty litigation are closely intermingled. Factors to be considered are whether the claims of all the parties arise from the same project and involve common issues and evidence. Also important is the possibility of inconsistent results." (*Vicik*, 99 Ill. App. 3d at 819-20, 426 N.E.2d at 261.)

The court concluded the claims of the subcontractors and material men all arose from and were intertwined with the dispute between the owners and the general contractor. The court determined arbitration of only a portion of the dispute would waste time and money, as well as entertain the possibility of inconsistent results between the legal and arbitration forums.

Several appellate court opinions have criticized and distinguished *Vicik*. (*Kelso-Burnett*, 107 Ill. App. 3d 34, 437 N.E.2d 26; *J&K Cement*, 119 Ill. App. 3d 663, 456 N.E.2d 889; *Diersen v. Joe Keim Builders, Inc.* (1987), 153 Ill. App. 3d 373, 505 N.E.2d 1325; *Geldermann, Inc. v. Mullins* (1988), 171 Ill. App. 3d 255, 524 N.E.2d 1212; *Landmark Properties, Inc. v. Architects International-Chicago* (1988), 172 Ill. App. 3d 379, 526 N.E.2d 603.) These cases have followed "the general rule in Illinois that arbitration agreements in multiparty litigations should be enforced despite the existence of claims by third parties which create the potential for duplicative proceedings." (*J&K Cement*, 119 Ill. App. 3d at 679, 456 N.E.2d at 900-01, citing *Iser Electric Co. v. Fossier Builders, Ltd.* (1980), 84 Ill. App. 3d 161, 166, 405 N.E.2d 439, 442.) In *J&K Cement*, as in *Vicik*, a dispute arose between the owner and general contractor. When the subcontractors filed suits to foreclose on mechanics' lien claims, the general contractor filed for an order to stay all proceedings and to compel arbitration under the general contract.

The Second District Appellate Court relied on the policy favoring arbitration and concluded the trial court erred in refusing the motion to compel arbitration. The court rejected the arguments that judicial economy and intermingled issues would have favored consolidation of all the parties' claims for resolution by the trial court rather than arbitration of a portion of the dispute between the owner and general contractor. The court further ruled the broad language of an arbitration clause, like the one contained in the contract between Carle and English Brothers, will be construed as an agreement by the parties to resolve any and all disputes arising out of the subject matter of the contract. In applying the general rule that favors enforcement of arbitration agreements as a means of dispute resolution, the court in *J&K Cement* noted public policy would be frustrated if courts did not recognize and give weight to such agreements. In construing the rationale behind the Uniform Arbitration Act, the court stated:

> "Parties agree to broad arbitration clauses in construction contracts specifically to encompass disputes which are not foreseeable at the time of contracting and expect that such agreements will be specifically enforceable in a court action. To deny \*\*\* [the] motion to compel arbitration here would deny parties the right to their contractually chosen method of dispute resolution. We are not prepared to ignore the policy favoring arbitration simply because of the presence of multiple parties. Similarly, we believe the drafters of the Uniform Arbitration Act anticipated multiparty problems and intended that

arbitration agreements nonetheless be enforced in such situations." *J&K Cement*, 119 Ill. App. 3d at 682, 456 N.E.2d at 902-03.

■■ We agree with the above reasoning behind the general rule favoring arbitration and apply it to the simple realities of this case. Here, Carle and English Brothers agreed by contract to arbitrate their disputes. Neither party has refused to arbitrate by denial of the existence of such an agreement. In its attempt to stay the arbitration proceedings, Kurland failed to show, pursuant to statutory directive, the contract between Carle and English Brothers lacked an agreement to arbitrate. (Ill. Rev. Stat. 1987, ch. 10, par. 102(b).) Accordingly, the motion by Kurland to enjoin arbitration was properly dismissed by the trial court for failure to state a cause of action.

We fail to see how arbitration of the dispute between Carle and English Brothers will either hinder judicial economy or promote inconsistent results. To the contrary, it seems arbitration will only serve to define the issues and make more manageable the resolution of the disputes of the parties outside the arbitration agreement. Joinder of multiple parties in litigation frequently fails to save the time and money of the court and parties involved. Moreover, even if we believed time would be saved by enjoining arbitration in this instance, we conclude judicial economy is an inadequate reason for ignoring the existence of the arbitration agreement between Carle and English Brothers. See *J&K Cement*, 119 Ill. App. 3d at 676, 456 N.E.2d at 899.

We affirm the dismissal of Kurland's request to stay arbitration.

Affirmed.

LUND and SPITZ, JJ., concur.