(No. 83578.—

BOARD OF MANAGERS OF THE COURTYARDS AT THE WOODLANDS CONDOMINIUM ASSOCIATION, Appellee, v. IKO CHICAGO, INC., *et al.* (Johnston Associates, Inc., Appellant).

*Opinion filed June 18, 1998.*

BILANDIC and HARRISON, JJ., dissenting.

Ty D. Laurie and Daniel S. Brennan, of Schiff, Hardin & Waite, of Chicago, for appellant.

Jeffrey S. Youngerman and C. Corey S. Berman, of Kovitz, Shifrin & Waitzman, of Buffalo Grove, for appellee.

Robert J. Harris and Evan Kraus, of Stein, Ray & Conway, of Chicago, for third-party appellees.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Board of Managers of the Courtyards at the Woodlands Condominium Association, filed a complaint against the developers of the condominium, Zale Groves, Inc., Zale Group, Inc., Zale Enterprises, Inc., and Zale Construction Company (collectively, the Zale defendants), for alleged defects in the design and construction of the development's roofs. The Zale defendants filed a third-amended third-party complaint against Johnston Associates, Inc. (Johnston), and certain other entities which contracted with the Zale defendants to build the roofs. At issue in this case is the contract between Zale Construction Company and Johnston in which Johnston agreed to furnish architectural and design services for the buildings. The contract also included an arbitration clause. Based upon this clause, Johnston filed a written demand

for arbitration with the American Arbitration Association. Johnston also filed a motion to compel arbitration and stay the third-party claims against it pursuant to section 2(a) of the Illinois Uniform Arbitration Act (710 ILCS 5/2(a) (West 1994)). Relying on *J.F. Inc. v. Vicik*, 99 Ill. App. 3d 815 (1981), the trial court denied Johnston's motion, finding that the issues and parties were so "intertwined" and "interconnected" that "they could not be resolved without all the parties being a part of this litigation." Johnston appealed to the appellate court, which affirmed the trial court's decision. See 288 Ill. App. 3d 801, 807. We granted Johnston's petition for leave to appeal (166 Ill. 2d R. 315) and now reverse the decision of the appellate court.

## BACKGROUND

The detailed facts of the case are fully set forth in the appellate court opinion. 288 Ill. App. 3d 801. We will provide the relevant background necessary to dispose of the issue presented.

The plaintiff maintains the common elements of a 128-building condominium development in Buffalo Grove, Illinois. In 1994, plaintiff filed a complaint against the Zale defendants seeking damages for alleged defects in the design and construction of the condominium's roofs. On March 1, 1996, the Zale defendants filed their third-amended third-party complaint against IKO Chicago, Inc., W.A. Anderson Construction Company, Lenny Szarek, Inc., Prate Roofing, Inc., S.J. Nitch/Roof Brokers, Inc., All American Roofing, Inc., and Johnston. The Zale defendants premised their third-party action solely on theories of conditional contribution or indemnification. The Zale defendants did not allege any independent causes of action against any third-party defendant.

In count VII of the third-amended third-party complaint, the Zale defendants alleged that they entered into a written contract with Johnston in which Johnston

agreed to furnish architectural and design services for the buildings. The Zale defendants further alleged that "the actions of which plaintiff complains in its fifth amended complaint are services furnished in part by third party defendant [Johnston]."

The contract between Johnston and Zale Construction Company included the following provision:

"Either party may demand in writing arbitration of all claims, disputes or questions of this Contract or breach thereof in accordance with the prevailing rules of the American Arbitration Association, within reasonable time before the date legal proceedings would be barred by applicable statute of limitations, and judgment upon the award rendered by the arbitrators shall be final and may be entered in any court having jurisdiction thereof."

Based on this arbitration clause, Johnston filed and served a written demand for arbitration with the American Arbitration Association on April 4, 1996. On that same day, Johnston filed a motion to compel arbitration and stay the third-party claims against it pursuant to section 2(a) of the Illinois Uniform Arbitration Act (the Act) (710 ILCS 5/2(a) (West 1994)).

Plaintiff, the Zale defendants, and W.A. Anderson Construction Company opposed Johnston's motion, relying on the decision in *Vicik*. The *Vicik* court held that the policy favoring arbitration may give way to competing policies favoring joinder of claims in light of the following factors: decreased delay, complexity and costs, resolution of common issues in a single forum, desirability of consistent results, and prejudicing or affecting parties who did not execute an arbitration agreement. 288 Ill. App. 3d at 806. The Zale defendants argued that Johnston's motion should be denied because the "issues in this case are inextricably intertwined, intermingled and dependent upon each other such that the issues raised in count VII cannot be severed."

Johnston responded by stating that since there was

no dispute as to the agreement to arbitrate, its motion should be granted. Johnston argued that the trial court should not apply the *Vicik* analysis because *Vicik* has been criticized by Illinois courts. Johnston further argued that the public policy considerations enumerated in *Vicik* were insufficient to override the general rule in Illinois that arbitration agreements in multiparty proceedings should be enforced.

On June 11, 1996, the trial court denied Johnston's motion based on the reasoning in *Vicik*. While recognizing the validity of the arbitration agreement, the trial court nonetheless found that the "problems would be enormous" if it were to allow arbitration to proceed either before or during litigation of the underlying action. The court stated that inconsistent results "might prejudice various other parties in this litigation. And prejudice is one of the factors that the court is considering here in relying on its ruling." On appeal, the appellate court affirmed the trial court. The court applied the *Vicik* factors and concluded that prejudices and inequities might result if the court compelled arbitration in this case. 288 Ill. App. 3d at 806-07.

## ANALYSIS

Johnston argues that the trial court erred in denying arbitration once the court found that a valid arbitration agreement existed. Johnston bases this argument upon section 2(a) of the Act, which provides:

> "On application of a party showing an [arbitration] agreement ***, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." 710 ILCS 5/2(a) (West 1994).

Based on the plain language of the statute, Johnston is

correct that at a hearing to stay a judicial proceeding and to compel arbitration, the trial court should concern itself solely with whether an agreement exists to arbitrate the dispute in question. See *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 669 (1983).

Here, the parties do not deny the existence of the arbitration clause in the contract between Johnston and Zale Construction Company. The plaintiff and Zale defendants argue, however, that compelling arbitration would lead to inconsistent results, compromise judicial economy, and prejudice nonsignatories to the arbitration agreement because the third-party claims are "inextricably intertwined with the claims alleged by the plaintiff." Johnston responds that its "contractual right to arbitration and Illinois' public policy favoring arbitration outweigh concerns regarding judicial economy, duplication of effort and possibly inconsistent results."

The parties request that this court resolve the conflict between important state polices favoring enforcement of arbitration agreements and the policies supporting joinder and the resolution of multiparty conflicts in a single forum.

It is a well-established principle that arbitration is a favored alternative to litigation by state, federal and common law because it is " 'a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions.' " *J&K Cement Construction, Inc.*, 119 Ill. App. 3d at 667-68, quoting *Layne-Minnesota Co. v. Regents of the University of Minnesota*, 266 Minn. 284, 287-88, 123 N.W.2d 371, 374 (1963); *First Condominium Development Co. v. Apex Construction & Engineering Corp.*, 126 Ill. App. 3d 843, 846 (1984). In Illinois, the general rule is that agreements to arbitrate will be enforced despite the existence of claims by third parties or of pending multiparty litigation. See *Iser*

*Electric Co. v. Fossier Builders, Ltd.*, 84 Ill. App. 3d 161, 166 (1980); *Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 538 (1986); *J&K Cement Construction, Inc.*, 119 Ill. App. 3d at 674; *Diersen v. Joe Keim Builders, Inc.*, 153 Ill. App. 3d 373, 377 (1987); *Jacob v. C&M Video, Inc.*, 248 Ill. App. 3d 654, 657 (1993). However, *Vicik* carved an exception to this rule.

In *Vicik*, homeowners contracted with a general contractor for the construction of a home. After a dispute arose between these parties, materialmen and subcontractors filed suit to foreclose their mechanics' liens. In response, the general contractor filed a motion to compel arbitration of its dispute with the homeowners. The homeowners sought to consolidate the foreclosure actions and stay the arbitration proceeding. The trial court denied the homeowners' motion. The appellate court reversed, concluding that the policy favoring joinder outweighed that favoring arbitration, where enforcement of the arbitration agreement would violate the very policy under which arbitration is favored. Accordingly, the *Vicik* court specified that arbitration may be enjoined in multiparty litigation under "strictly limited circumstances":

> "Where an arbitration agreement involves some, but not all, of the parties to multiparty litigation, the policy favoring arbitration must be weighed against the policies favoring joinder of claims. Where arbitration would increase rather than decrease delay, complexity and costs, it should not receive favored treatment. However, it is not sufficient to show merely that litigation would be the speedier and more economical means of resolving controversy. It also must be shown that the issues and the relationships among the parties to the multiparty litigation are closely intermingled. Factors to be considered are whether the claims of all the parties arise from the same project and involve common issues and evidence. Also important is the possibility of inconsistent results." *Vicik*, 99 Ill. App. 3d at 819-20.

Various districts of the appellate court have repeatedly criticized and distinguished *Vicik*. See *Kelso-Burnett Co. v. Zeus Development Corp.*, 107 Ill. App. 3d 34, 42-43 (2d Dist. 1982); *First Condominium Development Co. v. Apex Construction & Engineering Corp.*, 126 Ill. App. 3d 843, 849 (1st Dist. 1984). In fact, the First, Second, and Fourth Districts have expressly declined to follow *Vicik*. See *Geldermann, Inc. v. Mullins*, 171 Ill. App. 3d 255, 261 (1st Dist. 1988); *Landmark Properties, Inc. v. Architects International-Chicago*, 172 Ill. App. 3d 379, 384 (1st Dist. 1988); *M.D. Building Material Co. v. 910 Construction Venture*, 219 Ill. App. 3d 509, 519 (1st Dist. 1991); *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 675-82 (2d Dist. 1983); *Kurland Steel Co. v. Carle Foundation Hospital*, 185 Ill. App. 3d 624, 628-29 (4th Dist. 1989). These districts have held that public policy considerations supporting joinder do not outweigh the policy in Illinois favoring arbitration. See *J&K Cement Construction, Inc.*, 119 Ill. App. 3d at 675-82; *Kurland Steel Co.*, 185 Ill. App. 3d at 629.

The plaintiff and Zale defendants argue that the *Vicik* factors support the trial court's decision in this case because (1) the Zale defendants did not initiate the lawsuit; (2) the underlying action and the third party claims are inextricably intertwined, intermingled and dependent upon each other; and (3) there would be increased costs and inefficiencies if they are forced to defend claims in both proceedings. Therefore, they argue that the plaintiff's claims and the Zale defendants' third-party claims should not be severed.

Notwithstanding the fact that the *Vicik* factors, when applied to this case, could support the trial court's decision to deny Johnston's motion to compel arbitration, we reject the *Vicik* court's use of balancing factors in determining whether to compel arbitration in a multi-

party litigation. We agree with Johnston that once the trial court determines that a valid arbitration agreement exists, the court must compel arbitration, even when the principal litigation involves parties that are not signatories to the arbitration agreement.

We base this holding primarily on our adherence to the right of parties to freely contract. Arbitration is "consensual"; a creature of contract (T. Stipanowich, *Arbitration and the Multiparty Dispute: The Search for Workable Solutions*, 72 Iowa L. Rev. 473 (1987)). This is evidenced by section 1 of the Act, which provides:

> "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract ***." 710 ILCS 5/1 (West 1994).

In essence, once a contract containing a valid arbitration clause has been executed, the parties are irrevocably committed to arbitrate all disputes arising under the agreement. *First Condominium*, 126 Ill. App. 3d at 846. The parties, therefore, are bound by their contract with its obligations, duties, and liabilities.

We believe that Johnston is entitled to the benefit of its bargain. If we were to deny Johnston's request for arbitration, arbitration clauses would be considered meaningless and we would deny parties the right to their contractually chosen method of dispute resolution. This result would undermine the status of arbitration in Illinois.

Furthermore, although the Act does not contain provisions specifically addressing multiparty disputes, the Seventh Circuit in *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711 (7th Cir. 1967), stated that section 2(d) shows that the legislature contemplated multiplicity of actions and provides a court with two options: stay the entire proceeding pending arbitration, or, if the issue is

severable, the stay may be granted with respect to that issue only. 710 ILCS 5/2(d) (West 1994). The *Galt* court explained:

> "In enacting the Uniform Arbitration Act, the [Illinois] Legislature has not eradicated a chancellor's inherent powers, but the legislature has determined in Section 2 that it is no longer equitable to enjoin arbitration to prevent multiplicity of actions." *Galt*, 376 F.2d at 716.

See *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20, 74 L. Ed. 2d 765, 782, 103 S. Ct. 927, 939 (1983) (holding that the Federal Arbitration Act *"requires* piecemeal resolution when necessary to give effect to an arbitration agreement" and mandates enforcement of an arbitration agreement "notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement" (emphasis added)). Accord *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985).

We believe the provisions of the Act militate against the contention that a party to an arbitration agreement may choose between the judicial or arbitration forum. We further believe that the legislature intended to place arbitration agreements upon the same footing as other contracts and to override the judiciary's longstanding refusal to enforce agreements to arbitrate. A contrary view would allow a general contractor to simply have arbitration clauses in all of its contracts save one and then seek redress in the court. If it felt it had a better chance at arbitration, it could select that route. See *Stillwater Leased Housing Associates v. Kraus-Anderson Construction Co.*, 319 N.W.2d 424, 427 (Minn. 1982). We do not believe that the legislature intended to allow parties to "opt out" of arbitration agreements at their convenience.

Parenthetically, the Zale defendants argue that their third-party claim is not "ripe" for arbitration because

any determination on Zale's contingent claim must await resolution of plaintiff's own claims against the Zale defendants. However, Johnston did state in the circuit court that arbitration of the third-party claims against it could be postponed pending a determination of liability in the principal action. We view this arrangement as a viable solution to the parties' concerns regarding judicial economy, increased costs and contract enforcement. Johnston would be allowed to arbitrate its dispute with Zale Construction Company only if the Zale defendants are found liable, thus preventing the parties from arbitrating unnecessarily.

The plaintiff and Zale defendants, nevertheless, argue that allowing arbitration between two of the parties in a multiparty litigation would frustrate the goals of judicial economy. However, Illinois courts have repeatedly held that judicial economy is an insufficient basis for denying arbitration. See *J&K Cement Construction, Inc.*, 119 Ill. App. 3d at 676; *Kostakos*, 142 Ill. App. 3d at 538; *TDE Ltd. v. Israel*, 185 Ill. App. 3d 1059, 1068 (1989). Moreover, where the issues and relationships are sufficiently interrelated and the result of arbitration may be to eliminate the need for court proceedings, then the goals of judicial economy and of resolving disputes outside of the judicial forum are met. *Kostakos*, 142 Ill. App. 3d at 538.

Specifically, the Zale defendants argue that allowing arbitration in this case would frustrate the goals of judicial economy because the arbitration hearings are likely to interfere with evidence controlled by the plaintiff and subject to one or more protective orders previously entered in the underlying litigation. They also argue that plaintiff's litigation costs will increase since it will have some role in the arbitration proceedings, whether as a witness or being compelled to take part in discovery.

We disagree with the Zale defendants' contentions. If the principal litigation goes forward, followed by the

arbitration between Zale Company and Johnston, the arbitrators will have access to the records of the principal litigation, thereby diminishing discovery costs and participation of nonsignatory parties to the arbitration agreement, inconsistent results and conflicting rulings with respect to the collection of evidence. The trial court could stay apportionment of the liability, if any, pending the arbitrator's determination of whether the liability imposed on the Zale defendants is due to the architectural design of the roofs. Even if more effort or resources are required, this is not unfair to either the Zale defendants or Johnston because they agreed in writing to resolve their disputes in arbitration. By agreeing to arbitrate disputes with Johnston, the Zale defendants also agreed to accept the possible inconveniences associated with resolving the dispute in separate forums.

The Zale defendants also argue that plaintiff will be prejudiced by Johnston's absence. In particular, they argue that if Johnston knows that Zale will have to arbitrate its design liability claims after already having to try plaintiff's construction defect claims, Johnston will have little incentive to engage in settlement discussions prior to trial. Without any willingness to settle on Johnston's part, Zale may not want to enter into meaningful settlement discussions with plaintiff prior to trial. We do not believe that the Zale defendants' mere speculation regarding the prejudice against nonsignatories to an arbitration agreement warrants denial of Johnston's contractual right to arbitrate the Zale defendants' claim against it.

Plaintiff and the Zale defendants also contend that arbitration should not proceed in this case because a jury may ultimately have to decide which Zale entity is liable to the plaintiff. We fail to recognize the relevancy of this contention to the enforcement of the arbitration agreement between Johnston and the Zale defendants.

Lastly, plaintiff and the Zale defendants argue that because Johnston did not have arbitration agreements with Zale Groves, or Zale Enterprises, both of whom have third-party claims against Johnston, Johnston should be compelled to participate in the trial proceedings. Johnston claims, however, that after the trial court denied its motion to compel, Johnston plead the existence of arbitration agreements as a bar to all claims from the Zale defendants on the basis that when the complete contracts are disclosed all will have arbitration agreements. This issue is for the trial court to determine. If the court finds that a valid arbitration agreement exists between Johnston and Zale Groves and Johnston and Zale Enterprises, the trial court must compel arbitration. If a valid arbitration agreement does not exist, the third-party claims brought by Zale Groves and Zale Enterprises must be litigated in a judicial forum.

## CONCLUSION

In conclusion, we hold that agreements to arbitrate must be enforced despite the existence of claims by third parties or of pending multiparty litigation. Therefore, *Vicik* is overruled. The decisions of the circuit and appellate courts are reversed.

*Judgments reversed.*

JUSTICE BILANDIC, dissenting:

The majority precludes trial courts from ever exercising discretion when presented with a motion to compel arbitration of a single claim in a multiparty, multiclaim case. Under the majority's holding, a motion to compel arbitration must be granted regardless of the inequities and inefficiencies that might result. I disagree with the majority's adoption of an absolute rule requiring the enforcement of arbitration agreements in all cases regardless of the circumstances. I therefore dissent.

It is true that, generally, agreements to arbitrate will

be enforced despite the existence of multiple parties or multiple claims. See *Iser Electric Co. v. Fossier Builders, Ltd.*, 84 Ill. App. 3d 161, 166 (1980). I do not disagree with this as a general rule. In certain, very limited circumstances, however, the policy favoring arbitration should yield to considerations of judicial economy, efficiency and fairness. Where, as here, arbitration will cause increased delay, costs and complexity and will create the potential for inconsistent results, a motion to compel arbitration is properly denied.

A review of the complete procedural context of this case reveals why the trial court's decision to deny Johnston's motion was correct. This case involves one plaintiff, four defendants and seven third-party defendants. The plaintiff condominium board sued the four Zale defendants, alleged to be the developers of the condominiums, charging them with defects in the condominiums' roofs. The four Zale defendants filed third-party claims for contribution or indemnification against seven subcontractors, including Johnston. Johnston is alleged to be the architectural firm that provided architectural and design services for the buildings, including the roofs. The other six named subcontractors are alleged to have furnished various materials and labor for the condominiums. The asserted liability of the Zale defendants is apparently based upon the actions of these subcontractors in designing and constructing the condominiums' roofs. Each of the Zale defendants' third-party claims seeks damages from the third-party defendants only in the event that the Zale defendants are found liable to the plaintiff. Only Johnston's subcontract contained an arbitration clause.

The interrelationship of these claims is such that the rights and liabilities of all the parties may not be equitably and consistently determined in separate proceedings. All of the claims arise out of the same construction proj-

ect, relate to the same alleged defects and involve the designs provided by Johnston. Moreover, the evidence presented on each claim will be substantially the same. The asserted liability of the Zale defendants, as the developers, is vicarious for the acts of the subcontractors who designed and constructed the condominiums. Consequently, in order to establish the Zale defendants' liability, the plaintiff will attempt to show that the roofs are defective and that the defects resulted from faulty design or construction or both. The Zale defendants, in addition to defending against the plaintiff's claim, will attempt to show that the defects, if any, were the result of the actions of the third-party defendants in designing or constructing the roofs. Each third-party defendant, Johnston included, will in turn attempt to prove that its actions did not cause a defect in the roofs. It must be emphasized that the claim against Johnston, like the other third-party claims, is entirely derivative. The Zale defendants seek damages from Johnston only in the event that they are held liable to the plaintiff. If judgment is entered in favor of the Zale defendants, there will be no need to resolve the third-party claim against Johnston. If, on the other hand, judgment is entered against the Zale defendants, proper apportionment of the liability may require a determination of Johnston's liability. A single trier of fact should determine the defendants' and the third-party defendants' respective liabilities, if any, to the plaintiff and among each other.

Further, given the role played by Johnston in the construction project, Johnston may be crucial to a complete resolution of this litigation. Presumably, the other six subcontractors followed the design prepared by Johnston in executing their contractual functions. Those subcontractors may attempt to defend the third-party actions on the ground that they acted in accordance with the designs provided by Johnston. In fact, one of those

subcontractors, W.A. Anderson Construction Company, alluded to such a defense in a brief filed in the circuit court in opposition to Johnston's motion. Accordingly, even if Johnston is not a party to the litigation, evidence relating to its performance on the project will be necessary to fully resolve the other claims. Moreover, as noted by the majority, Johnston may remain a third-party defendant in this litigation even if its motion to compel is granted. Johnston's demand for arbitration was filed against Zale Construction only, not the other Zale defendants. Thus, even if Johnston's motion to compel arbitration and stay proceedings is granted, Johnston may remain in the circuit court proceedings with respect to the third-party claims filed by the other Zale defendants. The majority acknowledges this possibility, but nonetheless orders that the single claim by Zale Construction against Johnston proceed separately in an arbitral forum. 183 Ill. 2d at 78.

In addition, the potential exists for inconsistent results if the claim against Johnston proceeds in an arbitral forum. In the judicial proceeding, the trier of fact could potentially find for the plaintiff and against the Zale defendants without placing any responsibility on the six subcontractors who remained in the action, finding instead that Johnston's design caused the roof defects. In the arbitration, however, the arbitrators could conclude that the roof defects were the result of improper construction, not Johnston's designs.

Finally, allowing arbitration of the claim against Johnston will increase costs and will be a highly inefficient use of resources. As demonstrated above, the claim against Johnston is so interwoven with the nonarbitrable claims that substantially the same evidence would be presented in both the litigation and the arbitration. The Zale defendants will be compelled to present the same evidence and arguments in two different forums. In addi-

tion, although Johnston stated in the circuit court that arbitration "could" await a determination of liability in the principal action, there is no indication in the record that Johnston has *agreed* to postpone the arbitration proceeding. Rather, in its brief, Johnston merely states that the arbitrator has the discretion to decide when to schedule the arbitration hearing. Accordingly, it is conceivable that the arbitration would take place before the resolution of the principal action.

The reason that arbitration is a favored method of dispute resolution in this state is that it is viewed as "easier, quicker and more economical" than litigation. *First Condominium Development Co. v. Apex Construction & Engineering Corp.*, 126 Ill. App. 3d 843, 846 (1984). In this case, however, enforcing the arbitration agreement will increase costs and complexity and will substantially delay the complete resolution of the case. In these limited circumstances, the trial court should have the discretion to deny arbitration. The trial court in this case correctly balanced the countervailing interests and denied Johnston's motion to compel arbitration. I would affirm the appellate court's affirmance of the trial court's ruling.

JUSTICE HARRISON joins in this dissent.

JUSTICE HARRISON, also dissenting:

I agree with Justice Bilandic's dissent. In addition, I would hold that *J.F. Inc. v. Vicik*, 99 Ill. App. 3d 815 (1981), was correctly decided and should not be over-ruled.