NO. 5-01-0427

 IN THE

 APPELLATE COURT OF ILLINOIS

 FIFTH DISTRICT
________________________________________________________________________

SHANNON HOBBS, on Behalf of Himself and All Others ) Appeal from the
Similarly Situated, ) Circuit Court
 of
 ) Madison County.
 Plaintiffs, )

 )
v. ) No. 99-L-1068
 )
STATE FARM MUTUAL AUTOMOBILE INSURANCE )
COMPANY, STATE FARM FIRE AND CASUALTY )
COMPANY, STATE FARM INDEMNITY COMPANY, )
CNA CASUALTY, CONTINENTAL CASUALTY, )
NATIONAL FIRE INSURANCE OF HARTFORD, )
TRANSCONTINENTAL INSURANCE COMPANY, )
VALLEY FORGE INSURANCE COMPANY, AMERICAN )
CASUALTY COMPANY, ALLSTATE INSURANCE )
COMPANY, ALLSTATE INDEMNITY COMPANY, )
SAFECO CORPORATION, GENERAL INSURANCE )
COMPANY OF AMERICA, LIBERTY MUTUAL )
INSURANCE COMPANY, LIBERTY MUTUAL FIRE )
INSURANCE COMPANY, LIBERTY INSURANCE )
CORPORATION, FIRST LIBERTY INSURANCE )
CORPORATION, USAA CASUALTY INSURANCE )
COMPANY, USAA GENERAL INDEMNITY )
COMPANY, UNITED SERVICES AUTOMOBILE )
ASSOCIATION, d/b/a USAA, GOVERNMENT )
EMPLOYEE INSURANCE COMPANY, d/b/a GEICO, )
GEICO CASUALTY COMPANY, GEICO GENERAL )
INSURANCE COMPANY, and GEICO INDEMNITY )
COMPANY, )
 )
 Defendants )
 ) Honorable
(Collette Cloyd, Plaintiff-Appellee v. Liberty Mutual Fire ) Nicholas
 G. Byron,
Insurance Company, Defendant-Appellant). ) Judge,
 presiding.
________________________________________________________________________

 JUSTICE KUEHN delivered the opinion of the court:
 Liberty Mutual Fire Insurance Company appeals on an interlocutory
basis from the trial court's May 25, 2001, order denying its motion to
compel an appraisal and to stay the individual claims of plaintiff Collette
Cloyd.
 This case is a putative class action concerning the use of automotive
repair parts manufactured by companies other than the original automobile
manufacturers (non-OEM parts). This appeal involves only the individual
claims of Collette Cloyd, a Chicago-area resident.
 The case was originally filed by an Illinois resident, Shannon Hobbs,
on November 2, 1999, and alleged that Liberty Mutual Fire Insurance Company
(Liberty Mutual) and other insurers provided inferior automobile parts in
settling claims. Thereafter, on January 13, 2000, Liberty Mutual filed
motions to dismiss but did not raise the appraisal clause at issue in this
appeal. On April 14, 2000, with leave to amend granted, a Mr. and Mrs.
Holder of Louisiana were added as plaintiffs. They alleged that Liberty
Mutual specified an "inferior quality replacement part" in estimating their
automobile's damages. Liberty Mutual filed a motion to dismiss this
amended complaint but again did not reference the appraisal clause. The
trial court largely denied that motion. Ultimately, the trial court
dismissed the Holders' claim on forum non conveniens grounds. On March 2,
2001, the complaint was again amended to add Collette Cloyd as a plaintiff
and class representative.
 Collette Cloyd insured her 1997 Pontiac Grand Prix with defendant
Liberty Mutual. She was involved in a motor vehicle accident in March 1999
in the Chicago area. Pursuant to her coverage with Liberty Mutual, she was
provided with a repair estimate. She alleges that this estimate was partly
based upon the use of non-OEM parts, including a tail lamp assembly and a
rear bumper cover.
 The Liberty Mutual automobile policy at issue provides in its
collision coverage section that, for its limits of liability, it will pay
the lesser of the actual cash value of the damaged car or the amount
necessary to repair or replace the car with property of "like kind and
quality."
 In a variety of theories, Collette Cloyd's complaint alleges that the
non-OEM parts utilized in its repair estimate are not of a like kind and
quality compared to OEM parts. Count I alleges that this practice violates
the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et
seq. (West 1996)). Count II alleges a breach of contract. Count III
alleges that Liberty Mutual is a coconspirator for the alleged tortious
conduct of its codefendants. Count IV seeks declaratory relief for future
claims. At issue in this appeal are counts I, II, and IV.
 The collision coverage within Liberty Mutual's policy includes an
appraisal clause, which provides as follows:
 "If we and you do not agree on the amount of loss, either may
 demand an appraisal of the loss. In this event, each party will
 select a competent appraiser. The two appraisers will select an
 umpire. The appraisers will state separately the actual cash value
 and the amount of loss. If they fail to agree, they will submit their
 differences to the umpire. A decision agreed to by any two will be
 binding."
In a different part of the policy-the general conditions-there is a clause
that provides as follows: "No legal action may be brought against us until
there has been full compliance with all the terms of this policy."
 Collette Cloyd did not join this lawsuit as a party plaintiff until
March 2, 2001. The pleading served upon Liberty Mutual at that time was
the third amended complaint. The third amended complaint was the first
version of this lawsuit to allege that the use of non-OEM parts to
calculate Collette Cloyd's loss breached the terms of the insurance policy.

 On March 8, 2001, Liberty Mutual communicated with Collette Cloyd's
attorney in writing and demanded that the parties resolve the dispute
pursuant to the appraisal clause. On March 30, 2001, Collette Cloyd's
attorney, acting on her behalf, refused to comply with Liberty Mutual's
demands. In this letter, Collette Cloyd asserts as follows:
 "In this case there is no dispute regarding the amount of loss, nor is
 this a circumstance where there is a question as to the actual cash
 value of property. The only question in this litigation is if Liberty
 Mutual, having elected to repair Ms. Cloyd's vehicle, has complied
 with its contractual obligation to provide sufficient amounts of money
 to replace damaged parts with 'like kind and quality'. Because there
 is no dispute as to the amount of a loss, but instead whether the
 replacement parts specified by Liberty Mutual are of 'like kind and
 quality,' the appraisal provision is irrelevant to Ms. Cloyd's claims
 against Liberty Mutual. Nor would comparison of the quality of non-
 OEM replacement parts to OEM parts be within the qualifications of
 appraisers."
Following its receipt of this letter, Liberty Mutual filed a motion to
compel an appraisal and to stay counts I, II, and IV pending the completion
of that appraisal. Without explanation, the trial court denied the motion.
 Each side proposes a standard of review. Liberty Mutual argues that
the standard to be applied is de novo. To the extent that this appeal
requires us to determine the meaning of some aspect of an insurance policy,
then that construction would be subject to de novo review, because
insurance policy construction involves a question of law. American States
Insurance Co. v. Koloms, 177 Ill. 2d 473, 480, 687 N.E.2d 72, 75 (1997).
However, with respect to the review of a denial of a requested appraisal,
we agree with Collette Cloyd's attorneys and conclude that we must
determine whether there is a sufficient showing to sustain the trial
court's order denying the relief sought. Lundy v. Farmers Group, Inc., 322
Ill. App. 3d 214, 218, 750 N.E.2d 314, 318 (2001) (citing J & K Cement
Construction, Inc. v. Montalbano Builders, Inc., 119 Ill. App. 3d 663, 667,
456 N.E.2d 889, 892-93 (1983)).
 Initially we need to address Collette Cloyd's argument that Liberty
Mutual waived its right to an appraisal. She contends that since the case
was originally filed 16 months before Liberty Mutual filed its motion
seeking an appraisal, too much time had elapsed and we should consider the
point waived.
 An appraisal clause can be waived. Lundy, 322 Ill. App. 3d at 219,
750 N.E.2d at 319. However, "waiver is disfavored because of the public
policy preference for conserving judicial resources through arbitration or
appraisal." Lundy, 322 Ill. App. 3d at 219, 750 N.E.2d at 319 (citing J.
Wise Smith & Associates, Inc. v. Nationwide Mutual Insurance Co., 925 F.
Supp. 528, 530-31 (W.D. Tenn. 1995)). Waiver occurs when a party's conduct
is so inconsistent with the appraisal clause that it constitutes an
abandonment of the right. Lundy, 322 Ill. App. 3d at 220, 750 N.E.2d at
319. In Lundy v. Farmers Group, Inc., Farmers Group, Inc., requested an
appraisal pursuant to its policy 10 months after the plaintiff filed suit.
Lundy, 322 Ill. App. 3d at 220, 750 N.E.2d at 320. In concluding that
Farmers Group, Inc., waived its right to invoke the appraisal clause, the
court concluded that its participation in the litigation was not merely
responsive. Lundy, 322 Ill. App. 3d at 220, 750 N.E.2d at 320.
 It is true that Liberty Mutual was involved in this case for 16
months prior to seeking to enforce its appraisal rights. But Collette
Cloyd was not a plaintiff for all of those 16 months. In fact, Collette
Cloyd was not named as a plaintiff until March 2, 2001. Six days later,
Liberty Mutual wrote Collette Cloyd's attorney a letter invoking its
appraisal-clause rights. Her attorney replied on March 30, 2001. On April
5, 2001, Liberty Mutual filed the motion at issue.
 Given Collette Cloyd's late introduction into this suit and because
the motion is specific to her claim, we cannot say that Liberty Mutual's
participation in the litigation relative to her claim was more than merely
responsive. Accordingly, we find that Liberty Mutual has not waived its
right to invoke the appraisal clause for this claim.
 We now turn to the primary question at issue in this case. Liberty
Mutual contends that its policy clearly provides for Collette Cloyd's claim
to be appraised. Collette Cloyd contends that appraisal clauses are
different from arbitration clauses. She argues that her claims are not
merely about the amount of her loss. She believes that relevant cases
dealing with appraisals involve only an issue as to the amount of a loss.
Because she claims that appraisal clauses can only address the amount of a
loss, she reasons that the appraisal clause at issue is unenforceable.
 Illinois courts have held that an arbitration clause and an appraisal
clause are similar in nature and that an appraisal clause is enforceable.
Beard v. Mount Carroll Mutual Fire Insurance Co., 203 Ill. App. 3d 724,
727, 561 N.E.2d 116, 118 (1990). We have already stated that such clauses
are a preferred option to litigation. After it is determined that an
appraisal clause exists, the court must next determine if the parties'
dispute is covered by the particular clause. J & K Cement Construction,
Inc., 119 Ill. App. 3d at 669, 456 N.E.2d at 894. Additionally, such a
clause should be broadly interpreted. Schutt v. Allstate Insurance Co.,
135 Ill. App. 3d 136, 143-44, 478 N.E.2d 644, 650 (1985). Because the
trial judge did not enunciate his reasons for denying Liberty Mutual's
motions, we do not know the manner in which this question was considered.
 As authority for the enforcement of its appraisal clause, Liberty
Mutual cites a case previously decided by this court. In Beard v. Mount
Carroll Mutual Fire Insurance Co., 203 Ill. App. 3d 724, 561 N.E.2d 116
(1990), following the total destruction of her rental house by fire, Velma
Beard sought to recover under a fire policy. Beard, 203 Ill. App. 3d at
726, 561 N.E.2d at 117. That policy contained an appraisal clause very
similar to the one contained within Liberty Mutual's policy. That clause
stated that in the event that the insured and the insurance company could
not agree on "the actual cash value or the amount of loss," then either
party could demand an appraisal. Beard, 203 Ill. App. 3d at 726, 561
N.E.2d at 117. Each party would select an appraiser, and then the
appraisers would select an umpire. Beard, 203 Ill. App. 3d at 726, 561
N.E.2d at 117. Each appraiser would appraise the loss, and if they could
not agree, then they would submit their differences to the umpire for a
final resolution. Beard, 203 Ill. App. 3d at 726, 561 N.E.2d at 117.
Mount Carroll Mutual Fire Insurance Company filed a motion to compel an
appraisal, which the trial judge denied on the basis that because the house
was a total loss, there was nothing to be appraised. Beard, 203 Ill. App.
3d at 727, 561 N.E.2d at 117-18. On appeal, this court concluded that
there was no ambiguity in the insurance policy and that, therefore, however
difficult it might be to appraise a total loss, an appraisal had to be
conducted. Beard, 203 Ill. App. 3d at 729, 561 N.E.2d at 119.
 Liberty Mutual's position is that the clauses at issue are
unambiguous and should be enforced. We agree with Liberty Mutual that the
clauses at issue are unambiguous. Collette Cloyd's policy covered her for
damages to her automobile. If the parties could not come to an agreement
relative to the amount of such a loss, then appraisers would be appointed
and decide the matter. The policy also unambiguously provides that there
can be no legal action filed unless and until there has been full
compliance with all policy terms.
 With respect to Collette Cloyd's breach-of-contract and declaratory
judgment claims, her attorneys contend that whether or not Liberty Mutual
utilized non-OEM automobile parts is not an issue relating to the amount of
the loss. She claims that Liberty Mutual breached its contract with her by
estimating the amount of her loss based upon the utilization of non-OEM
parts. Theoretically, one could argue that factoring non-OEM parts into a
car-damage estimate is not about the amount of the loss. But that argument
is illogical. The use of non-OEM parts has everything to do with the
amount of the loss. The price of non-OEM parts is generally lower than the
price of original parts, thus saving the insurance companies money. That
is why the non-OEM parts are used in estimates and subsequent repairs. The
use of non-OEM parts could potentially lower the value of the automobile-
another monetary issue. The nature of Collette Cloyd's claims clearly
involves the amount of her loss.
 We conclude that if the trial court based its ruling relative to
counts II and IV on the theory that the use of non-OEM parts does not
impact the amount of the loss, then that ruling was erroneous.
 Collette Cloyd also argues that an appraisal is inappropriate because
an appraiser could not provide an opinion as to whether the estimate
provided for parts of "like kind and quality." In essence, she contends
that a determination of whether the parts are of "like kind and quality"
requires a policy interpretation. In support of her argument, she cites to
Lundy v. Farmers Group, Inc. From the Second District Appellate Court
opinion, it appears that plaintiff Ruth Lundy filed her non-OEM class
action lawsuit alleging common law and statutory fraud. Lundy, 322 Ill.
App. 3d at 215-16, 750 N.E.2d at 316. In that context, her complaint was
in numerous counts, including a count seeking declaratory relief and
alleging a breach of contract. Lundy, 322 Ill. App. 3d at 217, 750 N.E.2d
at 317. Upon the consideration of her fraud claims and the insurer's
appraisal request, the appellate court stated as follows:
 "The resolution of plaintiff's claims will require a determination of
 whether Farmers misrepresented to its policyholders the quality of
 repair parts that Farmers would pay for under its policies. This
 question requires an interpretation of the policy language, in
 particular, the phrase 'like kind and quality.' These issues cannot
 be resolved through the appraisal process." Lundy, 322 Ill. App. 3d
 at 219, 750 N.E.2d at 319.
Bearing in mind that the Second District's analysis involved claims of
fraud, and not necessarily a breach-of-contract claim, we disagree with the
conclusion that applying the phrase "like kind and quality" to a
determination of the amount of a loss requires a special interpretation.
The phrase contains terms that are simple, unambiguous, and have but one
meaning. An appraiser determining the amount of a loss will be creating
his or her estimate either with or without non-OEM parts. Creating an
estimate requires careful analysis. Each party can select an appraiser
with expertise to address the possible use of non-OEM parts. Those
appraisals, by their express purpose, will necessarily include a
determination of the type of parts to be utilized in the repair.
 If the Second District analysis related to more than claims of fraud,
we disagree with their analysis. The opinion of another district of the
Illinois appellate court does not necessarily bind us in reaching our
decision. Morris B. Chapman & Associates, Inc. v. Kitzman, 307 Ill. App.
3d 92, 102, 716 N.E.2d 829, 838-39 (1999), aff'd, 193 Ill. 2d 560, 739
N.E.2d 1263 (2000). Again, if the trial court based its decision on the
declaratory judgment and breach-of-contract claims on the basis of Lundy v.
Farmers Group, Inc., we conclude that the trial court erred.
 Collette Cloyd also argued to the trial court that appraisers would
be incompetent to determine whether non-OEM parts are of "like kind and
quality" compared to the parts they replaced. In her appellate brief, she
cites to a Liberty Mutual employee's deposition testimony. In part, the
employee's job involves writing appraisals regarding damaged vehicles. The
employee acknowledged that he would not be able to determine the
differences in the quality of parts and that such an opinion would probably
come from an engineer.
 The problem with this argument is that the employee appraiser only
does an initial assessment of the damage. While that employee may well be
incompetent to testify as to the differences in the quality of parts, that
does not mean that the insured could not select an appraiser who could so
testify. It is the insured's right to select whomever she believes is
necessary to adequately address the quality issue.
 We do not know whether the trial court based its order denying
Liberty Mutual's appraisal request in whole or in part because of the
argument that an appraiser is incompetent to determine whether the parts
specified in an estimate are of "like kind and quality." If this argument
was partially or completely the basis of the order, then the trial court's
decision was erroneous.
 With respect to the conspiracy claims, Collette Cloyd argues that an
appraisal cannot address those issues. Apparently, Liberty Mutual agrees
with this argument, because that issue was not raised on appeal.
 Lastly, we must determine if the appraisal clause applies to the
consumer-fraud claim-count I. Liberty Mutual argues that it does apply
because the consumer-fraud claim is connected to the other claims.
Collette Cloyd relies upon Lundy v. Farmers Group, Inc., which involved a
consumer-fraud count and which concluded that an appraisal would be
inappropriate.
 Collette Cloyd's consumer-fraud claim alleges that Liberty Mutual and
the other defendants misrepresented the quality of non-OEM parts and
reduced their coverage obligations because the non-OEM parts were
monetarily cheaper. As a result of the misrepresentations and the
resulting coverage reduction, Collette Cloyd and others in her purported
class claim that they sustained damages.
 Damages must be shown in a consumer-fraud case. See Martin v.
Heinold Commodities, Inc., 163 Ill. 2d 33, 59, 643 N.E.2d 734, 747 (1994);
Warren v. LeMay, 142 Ill. App. 3d 550, 569, 491 N.E.2d 464, 476 (1986).
 As stated earlier, appraisal clauses and arbitration clauses are
similar in nature. Beard, 203 Ill. App. 3d at 727, 561 N.E.2d at 118.
Both types of clauses are favored because they promote judicial economy.
Lundy, 322 Ill. App. 3d at 219, 750 N.E.2d at 319; Board of Managers v. IKO
Chicago, Inc., 183 Ill. 2d 66, 76, 697 N.E.2d 727, 732 (1998). In an
arbitration case, the Illinois Supreme Court held that if the issues and
relationships of the parties are "sufficiently interrelated," then the
arbitration of those issues should be undertaken. Board of Managers, 183
Ill. 2d at 76, 697 N.E.2d at 732.
 The manner in which Collette Cloyd's consumer-fraud claim is alleged
naturally intertwines the claim with the breach-of-contract and declaratory
judgment claims. The claims involve damages-whether Liberty Mutual saved
money by specifying non-OEM parts in its estimates and subsequent repairs.
Consequently, even with the consumer-fraud claim, the issue involves the
parties' disagreement regarding the amount of the loss. That issue is
covered by the appraisal clause. If the appraisal process determines that
the use of non-OEM parts did not damage Collette Cloyd, then all of those
claims would be resolved without the need of a court process.
 The Second District contends that this argument is an
oversimplification of the issue. Lundy, 322 Ill. App. 3d at 219, 750
N.E.2d at 319. Perhaps the difference between our analysis and their
analysis lies in the consumer-fraud allegations at issue. To the extent
that Lundy v. Farmers Group, Inc., stands for the proposition that an
appraisal clause can never be valid in the face of a consumer-fraud claim,
we respectfully disagree. Such a broad-based holding is contrary to the
public policy that favors judicial economy by the enforcement of appraisal
and arbitration clauses.
 We find that the allegations of this particular consumer-fraud claim
are intertwined with the breach-of-contract and declaratory judgment
claims. Liberty Mutual's appraisal clause is simple and applicable. The
consumer-fraud claim can properly be a subject of an appraisal. If the
appraisers determine that Liberty Mutual paid Collette Cloyd's body shop a
sufficient sum of money to repair her car with parts of like kind and
quality, she has no consumer-fraud claim as it is presently alleged.
Judicial economy concerns dictate this inexpensive alternative.
 For the foregoing reasons, the judgment of the circuit court of
Madison County is hereby reversed, and the cause is remanded.
 Reversed; cause remanded.

 MAAG, P.J., and RARICK, J., concur.

 NO. 5-01-0427
 IN THE
 APPELLATE COURT OF ILLINOIS
 FIFTH DISTRICT
____________________________________________________________________________
_______

SHANNON HOBBS, on Behalf of Himself and All Others ) Appeal from the
 Circuit
Similarly Situated, ) Court of
 Madison County.
 Plaintiffs, )
v. ) No. 99-L-1068
STATE FARM MUTUAL AUTOMOBILE INSURANCE )
COMPANY, STATE FARM FIRE AND CASUALTY )
COMPANY, STATE FARM INDEMNITY COMPANY, )
CNA CASUALTY, CONTINENTAL CASUALTY, )
NATIONAL FIRE INSURANCE OF HARTFORD, )
TRANSCONTINENTAL INSURANCE COMPANY, )
VALLEY FORGE INSURANCE COMPANY, AMERICAN )
CASUALTY COMPANY, ALLSTATE INSURANCE )
COMPANY, ALLSTATE INDEMNITY COMPANY, )
SAFECO CORPORATION, GENERAL INSURANCE )
COMPANY OF AMERICA, LIBERTY MUTUAL )
INSURANCE COMPANY, LIBERTY MUTUAL FIRE )
INSURANCE COMPANY, LIBERTY INSURANCE )
CORPORATION, FIRST LIBERTY INSURANCE )
CORPORATION, USAA CASUALTY INSURANCE )
COMPANY, USAA GENERAL INDEMNITY )
COMPANY, UNITED SERVICES AUTOMOBILE )
ASSOCIATION, d/b/a USAA, GOVERNMENT )
EMPLOYEE INSURANCE COMPANY, d/b/a GEICO, )
GEICO CASUALTY COMPANY, GEICO GENERAL )
INSURANCE COMPANY, and GEICO INDEMNITY )
COMPANY, )
 Defendants ) Honorable
(Collette Cloyd, Plaintiff-Appellee v. Liberty Mutual Fire ) Nicholas
 G. Byron,
Insurance Company, Defendant-Appellant). ) Judge,
 presiding.

____________________________________________________________________________
_______

Opinion Filed: March 8, 2002
____________________________________________________________________________
_______

Justices: Honorable Clyde L. Kuehn, J.

 Honorable Gordon E. Maag, P.J., and
 Honorable Philip J. Rarick, J.,
 Concur
____________________________________________________________________________
_______

Attorneys Thomas Q. Keefe, Jr., Thomas Q. Keefe, Jr., P.C., #6 Executive
Woods Ct.,
for Belleville, IL 62226; David R. Dyroff, Jr., Husch & Eppenberger, LLC,
100
Appellant North Broadway, Suite 1300, St. Louis, MO 63105 (for Liberty
Mutual Fire Insurance
 Company)
____________________________________________________________________________
_______
____________________________________________________________________________
_______

Attorneys Elizabeth J. Cabraser, Morris A. Ratner, Scott P. Nealey,
Lieff, Cabraser, Heimann
for & Bernstein, LLP, 275 Battery Street, 30th Floor, San Francisco, CA
94111-3339;
Appellee Michael B. Hyman, William H. London, Melinda J. Morales, Mary
Jane Edelstein
 Fait, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., 200
North LaSalle
 Street, Suite 2100, Chicago, IL 60601; Mark C. Goldenberg, Elizabeth
V. Heller,
 Hopkins Goldenberg, 2227 South State Route 157, Edwardsville, IL
62025; Thomas
 P. Thrash, Attorney at Law, 1101 Garland Street, Little Rock, AK
72201; Don
 Barrett, S. Katherine Barrett, Barrett Law Office, P.A., 404 Court
Square North, P.O.
 Box 987, Lexington, MS 39095; Gordon Ball, 750 Nations Bank Center,
550 West
 Main Avenue, Suite 750, Knoxville, TN 37902; Patrick W. Pendley,
58005 Meriam
 Street, Plaquemine, LA 70764; Steven L. Martino, Jackson, Taylor &
Martino, P.C.,
 Southwest Bank Bldg., Suite 1600, 61 St. Joseph Street, Mobile, AL
36602 (for
 Collette Cloyd)
____________________________________________________________________________
_______
-----------------------
 NOTICE
Decision filed 03/08/02. The text of this decision may be changed or
corrected prior to the filing of a Petition for Rehearing or the
disposition of the same.